IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| P.H. INTERNATIONAL TRADING | ) | |
| COMPANY d/b/a HANA K. FASHIONS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  04-C-0903 |
| v. | ) | |
| CHRISTIA CONFEZIONI S.p.A., an Italian | ) | HONORABLE DAVID H. COAR |
| corporation and FBLGINC, Corp., a | | |
| Canadian corporation, and FBLG, Inc., a | | |
| Delaware corporation, | | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this court are two motions to dismiss the first amended complaint of Plaintiff P.

H. International Trading Company d/b/a Hana K. Fashions ("Plaintiff" or "Hana K.").

Defendant Christia Confezioni S.p.A. ("Christia") filed the first motion to dismiss.  Defendants

FBLG, Inc. and FBLGINC, Corp. (collectively "FBLG") filed the second motion to dismiss.  For

the reasons set forth below, Defendant Christia's motion to dismiss is **GRANTED with respect to**

**Count VII of the Complaint (violation of the Illinois Consumer Fraud and Deceptive Business**

**Practices Act), and DENIED with respect to all other Counts.**  Additionally, for the reasons set

forth below, Defendant FBLG's motion to dismiss is DENIED.

## I.    FACTUAL BACKGROUND

For the purposes of this motion, the following facts alleged in Plaintiff's first amended complaint are taken as true.

Plaintiff Hana K. is a New York corporation that conducts business at its facilities in Glencoe, Illinois.  (Am. Compl. ¶ 1).  Hana K. is in the business of promoting, marketing and selling high quality outerwear, including shearling lamb fur coats at the wholesale and retail level.  Hana K. is owned by Pierre and Hana Lang.  Defendant Christia is an Italian corporation with its principal place of business in Italy.  Christia is in the business of manufacturing high-end shearling coats.  (Am. Compl. ¶ 2).  Defendant FBLGINC, Corp., a Canadian corporation located in Canada, is in the business of marketing and selling outerwear.  Leonard Gorski ("Gorski") owns FBLGINC, Corp., which stands for Furs by Leonard Gorski, Inc.  (Am. Compl. ¶ 3).  Defendant FBLG, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware.  FBLG, Inc., however, has held itself out as a Canadian corporation and the distributor for Christia in North America.[1]  (Am. Compl. ¶ 4).

### A.    The Contractual Relationship between Hana K. and Christia

On April 21, 1989, Hana K. and Christia entered into a contract under which Hana K. agreed to become the exclusive North American distributor of Christia shearling products.  (Am. Compl. ¶ 10).   In exchange, Christia became Hana K.'s exclusive supplier of shearling products.  (Am. Compl. ¶ 11). In furtherance of this exclusive relationship, Hana K. used only Christia's

---

[1]  Because Plaintiff's first amended complaint refers throughout to "FLBG-Corp. and/or FBLG-Inc.," for the purposes of this motion, the Court will refer to Defendants FBLGINC, Corp. and FBLG, Inc. collectively as "FBLG."

name in conjunction with Hana K's name in every advertisement for shearling products. Christia encouraged this practice in order to promote Christia's name and promote Hana K. and Christia as a team that manufactured and sold only high-quality products throughout North America. (Am. Compl. ¶ 12). In addition, with the encouragement of Christia, Hana K.'s business card incorporated Christia's name and logo. (Am. Compl. ¶ 14).

On May 1, 1995, Hana K. and Christia renewed their contractual relationship and commitment to exclusivity. Their Distribution Agreement ("Agreement") expressly provided that Hana K. was the exclusive distributor of Christia garments in the United States and Canada (the "Territory") and that Christia would neither directly nor indirectly sell, transfer, or deliver garments in the Territory. The Agreement also provided that Hana K. neither produce nor directly market through intermediaries any products that are the same, similar to, or in competition with those of Christia; that Hana K. purchase products from Christia with the purpose of reselling it in the Territory; and that Hana. K. do its best to promote the sale of Christia products and display those products at all the trade-fairs and expositions it attended. (Am. Compl. ¶ 15).

Under its terms, the Agreement expired after five years. However, at the time of expiration, the Agreement automatically renewed for an additional five-year term unless one of the parties expressly notified the other of its intent not to the continue the contract for the additional term. (Am. Compl. ¶ 16). The notice of intent to terminate had to be communicated in writing to the other party at least six months prior to the expiration of the initial five-year term. Furthermore, the notice had to be sent by registered or insured mail, with a return receipt. (Am. Compl. ¶ 17).

The initial term of the 1995 Agreement between Christia and Hana K. would have expired on April 30, 2000. As such, the Agreement would automatically renew for an five years unless one of the parties receive notice to the contrary by October 31, 1999.  (Am. Compl. ¶ 18).

In a letter dated and allegedly mailed on October 29, 1999 and sent from Italy, Christia stated that the contract with Hana K. was not intended to automatically renew for an additional five years after the initial five-year term expired.  The letter was dated October 29, 1999, but Hana K. did not receive the letter until after October 31, 1999.  (Am. Compl. ¶ 19).

Subsequent to the letter's receipt, both Christia and Hana K. continued to perform pursuant to the terms of the 1995 Agreement for two and one-half years.  In fact, in subsequent catalogues, Christia continued to represent to Hana K. and to the world that Hana K. was the distributor for Christia in North America.  Furthermore, annual sales of Christia products by Hana K. increased during this period.  (Am. Compl. ¶ 20).

Subsequent to October 29, 1999, Christia pushed Hana K. to advertise a new line of shearling products, again using Christia's name in conjunction with Hana K.'s name.  In addition, Christia specifically represented to Hana K. that it would continue to use Hana K. as Christia's exclusive North American distributor.  Based upon Christia's specific and knowing representations, Hana K. continued as Christia's exclusive distributor and Christia continued to perform its obligations pursuant to the contract.  (Am. Compl. ¶ 21).

Subsequent to October 29, 1999, Christia also pushed Hana K. to advertise, promote, and exhibit Christia products at various trade shows.  For example, in a letter dated January 2002, the owner of Christia, Francesco Sorio, expressly requested that the owner of Hana K. market and advertise for Christia: "Dear Pierre [Lang], [w]ould you please inform us if you're going to do

the Fashion Coterie and in which days the fair is. There is an interesting issue in WWD magazine to put advertising for a good price." (Am. Compl. ¶ 22).

Subsequent to October 29, 1999, Christia also pushed Hana K. to purchase more products than Hana K. had purchased in the past. Hana K. continued to order shearling products from Christia, and Christia continued to supply shearling products to Hana K. on an exclusive basis. (Am. Compl. ¶ 23).

**B. The Alleged Wrongdoing by Christia and FBLG**

On behalf of FBLG, Leonard Gorski contacted Christia on numerous occasions during the initial five-year term of the 1995 Agreement. He did so in an effort to obtain an exclusive supply and distribution contract for Christia shearling products. (Am. Compl. ¶ 24). Gorski also solicited the Hana K. customers who owned Christia products. (Am. Compl. ¶ 27). At all relevant times, Gorski and FBLG were aware of the existence of the exclusive distribution and supply contract between Christia and Hana K. (Am. Compl. ¶ 26).

Gorski contacted Christia despite his knowledge of the exclusive contract, and in order to induce Christia to breach its contractual obligations to Hana K. (Am. Compl. ¶ 24). Despite Gorski's efforts, Christia refused to contract with Gorski or FBLG because of Christia's exclusive contract with Hana K. (Am. Compl. ¶ 25).

The Montreal Fur Fair took place between April 28, 2002 and May 1, 2002. Two weeks before the Fair, Christia informed Hana K. that Christia would now supply shearling products to Hana K. *and to* FBLG. (Am. Compl. ¶ 28). During the Fair, FBLG began acting as a North

American distributor of Christia products by inviting his clients to buy Christia products. (Am. Compl. ¶ 29).

In May 2002, Lang traveled to Italy to meet with Christia. Lang's goal was to ensure that the season's orders for Hana K. were manufactured and shipped in a timely fashion pursuant to custom, practice, and prior agreement. At that time, Christia accepted Hana K.'s order. (Am. Compl. ¶ 30). On June 4, 2002, however, Lang received a facsimile transmission from Christia stating that the order had been cancelled and the coats would not be delivered. The facsimile stated that Christia would no longer honor its exclusive contract with Hana K., and that any future orders could be filled only by FBLG. (Am. Compl. ¶ 31).

Plaintiff alleges that FBLG approached Christia in an effort to cause Christia to terminate its contract with Hana K., or alternatively, interfere with Hana K's business expectancy with Christia by suggesting that additional benefits would accrue to Christia if FBLG became the exclusive distributor of Christia products. (Am. Compl. ¶ 27). Plaintiff also alleges that FBLG and Christia have signed an exclusive supply and distribution agreement, despite and in violation of Hana K. and Christia's exclusive supply and distribution agreement. (Am. Compl. ¶ 33).

## C.    Plaintiff's Injuries

Plaintiff maintains that, since FBLG and Christia entered into an exclusive contract, Plaintiff has been unable to maintain its previously well-established wholesale business. (Am. Compl. ¶ 34). After thirteen consecutive years of representing to its accounts and customers that Christia products were the finest and most unique in the world, Plaintiff can no longer supply them. (Am. Compl. ¶ 35).

Plaintiff further maintains that, because it has lost its wholesale business, it has incurred great costs to secure substitute supplies of shearling. Plaintiff has been forced to expend considerable time, effort, and expense in developing its retail business, and is unable to sell its large inventory of Christia coats at the retail level at the same margin that it could have at the wholesale level. (Am. Compl. ¶ 36). Plaintiff built this large inventory--expending a large amount of capital in so doing--in order to maintain its relationship with Christia. Further, Plaintiff has lost money because FBLG has drastically underpriced its shearling products. (Am. Compl. ¶ 37).

Plaintiff also alleges that it has been forced to enter the manufacturing business to complete orders for goods that were placed prior to Christia's termination of its relationship with Plaintiff. (Am. Compl. ¶ 38).

Plaintiff further alleges that, as the exclusive distributor of Christia products in the United States, it imparted its experience and expertise about the American market to Christia. Christia and FBLG are benefitting from Plaintiff's knowledge to the detriment of Plaintiff. (Am. Compl. ¶ 39).

Plaintiff also maintains that, after having promoted Christia as the best manufacturer of shearling in the world, it has lost a great volume of customers who do not desire to buy alternative products from Hana K. (Am. Compl. ¶ 40). In addition, much of the fur coat industry considers Hana K. out of business. This has had a negative impact of Plaintiff's ability to sell its products. (Am. Compl. ¶ 41).

Finally, Plaintiff maintains that without Christia's name attached to Hana K's name, Plaintiff has lost both a significant component of its reputation for selling unique, high-end shearling products, and good will in the business. (Am. Compl. ¶ 42).

Plaintiff's Complaint lists the following counts against Defendants Christia and FBLG: Breach of contract or, in the alternative, promissory estoppel against Christia (Counts I and III, respectively); equitable estoppel against Christia (Count IV); tortious interference with contract or, in the alternative, tortious interference with prospective economic advantage against FBLG (Counts II and V, respectively); common law fraud, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and constructive fraud against Christia (Counts VI, VII, and VIII, respectively); in the alternative, *quantum meruit* against Christia (Count IX); in the alternative, unjust enrichment against Christia (Count X); civil conspiracy against Christia and FBLG (Count XI); and specific performance against Christia (Count XII).

## II.     STANDARD OF REVIEW

When a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue is based on a forum selection clause, the plaintiff has the burden of showing that venue is proper. See <u>M/S/ Bremem v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 18 (1972); <u>Moore v. AT&T Latin America Corp.</u>, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001). The court must resolve factual conflicts in the parties' submissions in favor of the plaintiff, and may look to facts outside the complaint to determine whether venue is proper. See <u>Moore</u>, 177 F. Supp. 2d at 788; <u>National Hydro Systems v. Summit</u>, 731 F. Supp. 264, 265 (N.D. Ill. 1989) (<u>citing</u> <u>Deluxe Ice Cream Co. v. R.C.H. Tool Corp.</u>, 726 F. 2d 1209, 1215 (7th Cir. 1984)).

A trial court has discretion to dismiss a suit on the grounds of *forum non conveniens* if doing so "best serves the convenience of the parties and the ends of justice." Kamel v. Hill-Rom Co., 108 F.3d 799, 802 (7th Cir. 1997). Dismissal on these grounds "will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981). The analysis has two steps. First, the court must determine whether an adequate alternative forum is available. Hyatt International Corp. v. Coco, 302 F.3d 707, 718 (7th Cir. 2002). Second, the court must balance all relevant public and private factors related to the proper forum for the litigation. Id. A "certain deference" typically must be given to the plaintiff's choice of forum. Id.

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. (12)(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The Court should not dismiss a complaint "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III.    ANALYSIS OF CHRISTIA'S MOTIONS TO DISMISS

Christia asserts three grounds on which to dismiss Plaintiff's first amended complaint: (1) Improper venue; (2) *Forum non conveniens*; and (3) Failure to state a claim upon which relief can be granted.

### A.    Improper Venue

Christia argues that the forum selection clause in the Agreement specifies Italy as the proper venue for disputes arising out of the Agreement; therefore, venue in the Northern District of Illinois is improper under Rule 12(b)(3).  According to Christia, the Agreement states "the competent court ***shall be*** the Court of Bassano del Grappa (VI), Italy." (Mem. Supp. of Def.'s Mot. to Dismiss 4) (emphasis in original).  Thus, the forum selection clause is mandatory.

Plaintiff counters that Christia's argument is based on an incorrect translation of the Agreement.  According to Plaintiff, the Agreement merely states that "the parties voluntarily accept the ***jurisdiction*** of Bassano del Grappa's Tribunal."  (Pl.'s Mem. Opp. Def.'s Mot. Dismiss 4) (emphasis in original).  Thus, the forum selection clause is *not* mandatory.  Both parties have attached declarations as to the true translation to their pleading.

As stated above, in deciding a motion to dismiss, the Court must resolve factual conflicts in the parties' submissions in Plaintiff's favor.  <u>See</u> <u>Moore</u>, 177 F. Supp. 2d at 788.  Because the correct translation of the forum selection clause in the Agreement is a factual conflict, this Court cannot accept Christia's translation of the Agreement as binding.  Consequently, this Court will not dismiss Plaintiff's Complaint on the grounds of improper venue.

### B. *Forum Non Conveniens*

Christia next argues that, even if this Court determines Illinois is a proper venue, Illinois is a *forum non conveniens*. According to Christia, an adequate alternative forum (Italy) is available and the balance of the public and private factors yields the conclusion that Italy, not Illinois, is the proper forum for this dispute.

As stated above, the first of two steps in a *forum non conveniens* analysis asks whether an adequate alternative forum exists. This inquiry "requires a finding that all the parties are within the jurisdiction of the alternative forum and are amenable to process there." Hyatt International Corp., 302 F.3d at 718. Under either of the Parties' translation of the forum selection clause in the Agreement (venue "shall be" the Italian court or the parties "accept the jurisdiction" of the Italian court) it is clear that both Plaintiff and Defendant are within the jurisdiction of the Italian court and are amenable to service of process in Italy.

Still, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . the district court may conclude that dismissal would not be in the interests of justice." Piper v. Reyno, 454 U.S. at 254. Accordingly, Plaintiff argues that dismissal would not be in the interest of justice because Plaintiff cannot obtain a remedy from the Italian courts for "Christia's fraudulent and tortious conduct, including Christia's violation of the [Illinois Consumer Fraud and Deceptive Business Practices Act]." (Pl.'s Mem. Opp. Def.'s Mot. Dismiss 6). While it is true that Plaintiff will be unable to allege a cause of action based on the Illinois Consumer Fraud and Deceptive Business Practices Act in Italy, it is not clear that Plaintiff has no remedy at all should an Italian court rule in Plaintiff's favor about Christia's conduct. See id. at 255. Rather, is it clear the Parties voluntarily accepted

the jurisdiction of Italy knowing that any number of disputes could arise between them and *could be resolved* in Italy. Thus, this Court determines that Italy is an adequate alternative forum, and proceeds to the second step of the analysis.

The second step requires the court to balance several private factors and public factors. Relevant private factors include "the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses; the cost of having witnesses attend proceedings; and all other practical problems that make trial of a case easy, efficient and economical." Kamel v. Hill-Rom Co., 108 F.3d 799, 803 (7th Cir. 1997) (citing Piper v. Reyno, 454 U.S. at 241 n.6). Relevant public factors include "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case [in the forum familiar with] the law that must govern the action; the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and the unfairness of burdening citizens in a unrelated forum with jury duty." Id.

As deciding whether to dismiss a case on the grounds of *forum non conveniens* is within the "sound discretion" of this Court, Piper v. Reyno, 454 U.S. at 257, this Court finds that the balance of public and private factors weighs in favor of Illinois as a convenient forum. Plaintiff is located in Illinois. Christia has traveled to Illinois before for trunks sales and consultations with Hana K., and has provided translations of the relevant documents in its pleadings. It does not appear, therefore, that litigating in Illinois makes attendance and access to sources of proof and witnesses unduly difficult. Morever, contrary to Christia's argument, the relationship between the Parties was as much centered in the United States as in Italy given Plaintiff's

marketing and distribution of Christia products throughout North America.  The Parties' dispute is localized in that Plaintiff conducts business from its facilities in Glencoe, Illinois.  Additionally, Christia's argument that Illinois is clearly a *forum non conveniens* because this Court would have to apply Italian law, pursuant to the choice of law provision in the Agreement, in resolving some of Plaintiff's claims is unpersuasive.  This Court often must apply foreign law.  Similarly, Christia argues that Plaintiff previously chose to litigate issues similar to those in this Complaint in Italy, and therefore cannot object to Italy as a more convenient forum.  The fact that a party has previously litigated in a foreign forum, without more, does not constitute a concession that the foreign forum is convenient for all matters and for all disputes.

In sum, Plaintiff has offered several reasons supporting its choice of forum.  <u>See</u> <u>Piper v. Reyno</u>, 454 U.S. at 249 (stating that dismissal is appropriate where a plaintiff cannot "offer any specific reasons of convenience supporting his choice").  Plaintiff's choice of forum in this dispute deserves some deference, and Christia has not shown that litigating in Illinois imposes such a heavy burden on it that the Court should refrain from exercising this deference.  <u>Id</u>. at 242, 249.  Consequently, Christia's motion to dismiss the Complaint on the grounds of *forum non conveniens* is denied.


## C.     Failure to State a Claim Upon Which Relief Can be Granted

Finally, Christia argues that each count of the Complaint fails to state a claim upon which relief can be granted, a Rule 12(b)(6) grounds for dismissal.

### 1. Counts I and XII

Christia seeks to dismiss Counts I (breach of contract) and XII (specific performance) by arguing, among other things, that an Italian court decided the validity of its termination of the Agreement in Christia's favor in 2002. On a 12(b)(6) motion, however, the court takes as true all well-pleaded facts in the complaint. The Complaint did not allege that Christia properly terminated the Agreement. Nor did the Complaint discuss the Italian court's decision. Consequently, Christia's motion to dismiss Counts I and XII is denied.

### 2. Counts III, IV, VI, VII, VIII, and XI

Christia seeks to dismiss Counts III (promissory estoppel), IV (equitable estoppel), VI (common law fraud), VII (violation of the Illinois Consumer Fraud and Deceptive Business Practices Act), VIII (constructive fraud), and XI (civil conspiracy) because Plaintiff has not stated a cause of action for estoppel or fraud. Christia argues that the Complaint only demonstrates that Defendant made a "vague promise of future conduct" to Plaintiff. (Mem. in Supp. of Def.'s Mot. to Dismiss 10).

"[P]romissory fraud is actionable [under Illinois law] only if it either is particularly egregious or . . . embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." <u>Desnick v. American Broadcasting Companies, Inc.</u>, 44 F.3d 1345, 1354 (7th Cir. 1995). The Parties do not agree whether Christia's promise is especially egregious promise or embedded in a large scheme inducing reliance; and case law provides little assistance. As noted by the Seventh Circuit, "[t]he distinction between a mere promissory fraud and a scheme of promissory fraud is elusive,

and has caused, to say the least, considerable uncertainty, as even the Illinois cases acknowledge. Some cases suggest that the exception has swallowed the rule . . . .  Others seem unwilling to apply the exception."  Id. (internal citations omitted).

This Court must square the case law with the well-established legal principle that a court should not dismiss a cause of action on the pleadings unless it is clear that no set of facts can be proved under the pleadings which will entitle the plaintiff the recovery.  Wallingford v. Zenith Radio Corp., 310 F.2d 693, 694-95 (7th Cir. 1962).  This is so even though fraud must be pleaded with particularity under Federal Rule of Civil Procedure Rule 9(b).

Plaintiff alleges that Christia represented, through words (letters, statements on its website, requests to market Christia products at specific times and places) and actions (continued purchasing and selling on an exclusive basis until the spring of 2002), that it would continue to use Plaintiff as its exclusive distributor in North America; that these representations were false because Christia later contracted with FBLG; that Christia made such knowingly false representations with the intent that Plaintiff would rely on them and continue to purchase from and market for Christia; and that Plaintiff reasonably relied on Christia's actions.

This Court finds, based on these allegations, there are facts that Plaintiff could conceivably prove to demonstrate that Christia's promises were particularly egregious or embedded in a larger fraudulent scheme.  Moreover, taking the allegations as true, Christia's promise was not as vague as Christia would have the Court believe.  The Complaint alleges that Christia promised to continue to use Plaintiff as its exclusive distributor.  Christia argues that this promise is vague because it lacks temporal limitation.  (Reply in Supp. of Def's Mot. to Dismiss 8).  The promise, however, is specific in its commitment to an *exclusive* relationship

with Plaintiff; it was not a vague promise to merely continue to use Plaintiff. Finally, Christia's argument that it simple exercised its right to change distributors is inappropriate as the issue of whether Defendant had this right is in dispute.

Therefore, this Court finds that Plaintiff's allegations adequately state a claim for promissory fraud under the exception state above in Desnick. See, e.g., Bensdorf & Johnson, Inc. v. Northern Telecom, Ltd., 58 F. Supp. 2d 874 (N.D. Ill. 1999) (recognizing that distributor stated a claim for promissory fraud). Christia's motion to dismiss Counts III, IV, VI, VII, VIII, and XI for failure to state a claim is denied.

### 3. Counts IX and X

In Counts IX (*quantum meruit*) and X (unjust enrichment), Plaintiff argues that it provided benefits and services to Defendant for which Defendant should pay. The "payment" Plaintiff alleges it was owed at the time is "the exclusivity belonging to Hana K. under the Distributorship Agreement." (Pl. Mem. in Opp. to Def's Mot. to Dismiss 13). Christia asserts two grounds for dismissal of these claims: (1) Plaintiff has not alleged any wrongful or unconscionable conduct on the part of Christia, which is a predicate for an unjust enrichment claim; and (2) Plaintiff is merely complaining that it was not compensated enough, rather than not at all, since the terms of the Agreement never promised Plaintiff money for its services above any profit margin Plaintiff earned from the sale of Christia products.

Christia's first argument is incorrect: Illinois law does not require proof of a defendant's wrongdoing to sustain a claim for unjust enrichment or *quantum meruit*. See Midcoast Aviation, Inc. v. General Electric Credit Corp., 907 F.2d 732, 738 n.3 (7th Cir. 1990). Christia's second

point ignores the sufficiency of the facts alleged in the Complaint. Under Illinois law, "The elements of *quantum meruit* liability . . . are the performance of services by the plaintiff, the receipt of the benefit of those services by the defendant, and the unjustness of the defendant's retention of that benefit without compensating the plaintiff." Id. at 737. Plaintiff's complaint alleges that Plaintiff performed distributing, marketing and advertising services for Christia products. (Am. Compl. ¶ 99). Further, the Complaint alleges Christia accepted the benefit of those services. (Am. Compl. ¶ 100). Finally, the Complaint alleges that it would be inequitable for Christia to retain the value of those services without payment for that value. (Id.) These allegations sufficiently state a cause of action for *quantum meruit*. Christia's motion to dismiss Count IX for failure to state a claim is denied.

A plaintiff states a cause of action for unjust enrichment when a plaintiff alleges that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." Johnson v. Gudmundsson, 35 F.3d 1104, 1114 (7th Cir. 1994). Plaintiff's Complaint alleges that Christia has unjustly retained the benefit of Plaintiff's "marketing, promotional, sales and administrative activities." (Am. Compl. ¶ 104). Further, the Complaint alleges that Christia did so by means of conduct that was fraudulent, deceptive, wrongful or unlawful and that Christia was enriched in excess of $50,000. (Id.) Thus, detriment to Plaintiff can reasonably be inferred from this and other allegations in the Complaint. See, e.g., Pleva v. Norquist, 195 F.3d 905, 911 (7th Cir. 1999) (stating that 12(b)(6) motions require the court to construe all inferences in favor of the plaintiff). Finally, the Complaint alleges that it would be unjust for Christia to receive the benefit of Plaintiff's activities without paying. (Am. Compl. ¶

105).  These allegations sufficiently state a cause of action for unjust enrichment.  Christia's

motion to dismiss Count X for failure to state a claim is denied.


### 4. Count VII

Christia seeks to dismiss Count VII because, Christia argues, Plaintiff has not stated a

cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act

("Consumer Fraud Act").  To state a cause of action under the Consumer Fraud Act, the plaintiff

must allege a deceptive act or practice; the defendant's intent that the plaintiff rely on the

deception; and that the deception occurred in the course of conduct involving a trade or

commerce.  Thacker v. Menard, Inc., 105 F.3d 382, 386  (7th Cir. 1997).   The Parties agree that

claims by non-consumers[2] must also allege that the defendant's conduct involves trade practices

addressed to the market generally or otherwise implicates consumer protection concerns.  Athey

Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 436-37 (7th Cir. 1996).

One of Christia's grounds for dismissing Count VII is that, even when viewed in the light

most favorable to Plaintiff, the Complaint does not allege that Christia's conduct affected Illinois

consumers.  This Court agrees.   Plaintiff's complaint merely asserts that "Christia's conduct

involves trade practices addressed to the market generally or otherwise implicates consumer

protection concerns."  (Am. Compl. ¶92).  Then, Plaintiff pleads its damages–harm to its

reputation, lost good will, and damage to its business.  (Id.)

Plaintiff's plea of damages is sufficient.  There is "no requirement that [a] plaintiff plead

any special damages other than damages to 'reputation', 'business' or 'prestige.'" Gadson v.

---

[2]  Plaintiff is not a consumer because it has purchased Defendant's products for resale, not for personal or
household use. 815 Ill. Comp. Stat. 505/1-e (2005).

Newman, 907 F. Supp. 1412, 1421 (C.D. Ill. 1992).  See also Downers Grove Volkswagen, Inc.

v. Wigglesworth Imports, Inc., 190 Ill. App. 3d 524, 534 (Ill. App. Ct. 1989) (rejecting

defendant's argument that plaintiff's allegations of great damage to its "standing, reputation,

prestige, good will and business" is deficient under the Consumer Fraud Act).

By contrast, Plaintiff's failure to identify which of Christia's actions impacted

consumers, to identify any harm at all to consumers, or to identify the kind of consumers that

have been harmed is not sufficient.  For example, the plaintiff in Gadson v. Newman, 907 F.

Supp. 1412, 1421 (C.D. Ill. 1992), alleged, in addition to damage to his business, harm to

*medical consumers* because of defendant's fraudulent practices.  In Downers Grove, 190 Ill.

App. 3d at 534, the court held that the plaintiff had invoked consumer protection concerns where

it alleged that the defendant *published false information* about plaintiff's prices *to* consumers.

Plaintiff's allegations better parallel those of the plaintiff in Speakers of Sport, Inc. v.

ProServ, Inc., 178 F.3d 862, 868 (7th Cir. 1999), where the Seventh Circuit held that the

plaintiff's allegation that defendant lured away a client's business with fraudulent promises did

not implicate consumer protection concerns.  See also Athey Products, 89 F.3d at 436-37 (finding

that the defendant "failed to allege the necessary nexus between the complained of conduct and

consumer protection concerns"); Lake County Grading Co. v. Advanced Mechanical

Contractors, Inc., 654 N.E.2d 1109, 1116 (Ill. App. Ct. 1995) (finding that there was no inherent

consumer interest in a construction contract between a general contractor and a subcontractor,

and that plaintiff failed to explain how its particular claim invoked consumer interests).

Plaintiff has failed to state how its claim invokes consumer interests.   In evaluating

standing, the Consumer Fraud Act is to be construed liberally.  See Gadson, 907 F. Supp. at 1421

(construing <u>Downers Grove</u>, 190 Ill. App. 3d at 534).   Nonetheless, Plaintiff must do more than simply restate the standard under the Consumer Fraud Act with no application at all, general or specific, to its set of facts.   From the allegations presented, this Court cannot draw a reasonable inference in favor of Plaintiff that Christia's false and misleading acts with regard to Plaintiff and FBLG implicated consumer protection concerns.   Christia's motion to dismiss Count VII of the Complaint is therefore granted.


### 5. Count XI

Finally, Christia seeks to dismiss Count XI (civil conspiracy) because, it argues, Plaintiff has not identified the unlawful purpose Defendant and FBLG sought to accomplish, or the unlawful means they employed.

In a civil conspiracy, two or more persons act in concert to commit an unlawful act or to commit a lawful act by unlawful means.  <u>Lenard v. Argento</u>, 699 F.2d 874, 882 (7th Cir. 1983). The principle elements of a civil conspiracy are an agreement between the parties to inflict wrong or injury on another and an overt act resulting in damages.  <u>Id</u>.  A plaintiff does not have to plead a civil conspiracy claim with particularity.  <u>Walker v. Thompson</u>, 288 F.3d 1005, 1007 (7th Cir. 2002).  It is sufficient to merely indicate the parties, the general purpose, and the approximate date, so that the defendant is on notice of the charges.  <u>Id</u>.

Plaintiff has alleged that two parties, Christia and FBLG, acted in concert to commit the unlawful act of tortiously interfering with Plaintiff's business relationship and contract with Christia.  Further, Plaintiff has alleged that Christia and FBLG agreed to form, and made the overt act of forming, a contract to replace Plaintiff as the exclusive distributor of Christia's

products in North America.  Count XI incorporates by reference the allegations in the Complaint that states dates from which this Court can draw a reasonable inference as to when the alleged civil conspiracy took place. Thus, under the liberal pleading standard outlined above, Plaintiff has stated a claim for civil conspiracy. Christia's motion to dismiss Count XI is denied.

## III.    ANALYSIS OF FBLG'S MOTION TO DISMISS

FBLG seeks to dismiss Counts II (tortious interference with a contractual relationship), V (tortious interference with prospective economic advantage), and XI (civil conspiracy) of the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.    Count II

FBLG seeks to dismiss Count II because it "it is legally impossible for FBLG to have interfered with a contract that did not exist."  (Mem. in Supp. of Def's Mot. to Dismiss 1). FBLG argues that Plaintiff's complaint concedes that Christia properly terminated its contract with Plaintiff on October 29, 1999.  Therefore, FBLG could not have interfered with an existing contract when it became Christia's exclusive distributor in 2002.

FBLG's argument ignores factual allegations in Plaintiff's complaint, which are taken as true for the purposes of a 12(b)(6) motion.  The Complaint does *not* admit that Plaintiff's contract with Christia was properly terminated at the time that FBLG began to market and distribute Christia products.   Each of FBLG's statements to the contrary in its motion to dismiss,

including its arguments about the Italian court's judgment in 2002 and Plaintiff's attempt to allege breach of an oral contract, must be disregarded as a matter of law.

Furthermore, Plaintiff has sufficiently alleged tortious inference with contract. Plaintiff has stated that: (1) A valid and enforceable contract existed between Plaintiff and another party, here Christia; (2) FBLG was aware of the contractual relationship; (3) FBLG was unjustified in intentionally inducing Christia to breach its contract; (4) Christia subsequently breached its contract because of FBLG's inducement; and (5) Plaintiff has suffered damages. See <u>Williams v. Shell Oil</u>, 18 F.3d 396, 402 (7th Cir. 1994).

Because it does not appear beyond all doubt that Plaintiff cannot prove a set of facts to support its claim in Count II, the Court cannot dismiss the claim. FBLG's motion to dismiss Count II is denied.


**B.     Count V**

FBLG seeks to dismiss Count V (tortious interference with prospective economic advantage) because, it argues, (a) Plaintiff cannot show that it had a reasonable expectation of a continuing business relationship with Christia and (b) even if it can, competitors like FBLG are privileged to interfere with Plaintiff's business relationships.

Plaintiff has stated a cause of action for tortious interference with prospective economic advantage. The Complaint alleges that: (1) Plaintiff had a reasonable expectation of continuing a valid business relationship with Christia; (2) FBLG knew of Plaintiff's expectancy; (3) FBLG's purposeful interference prevented Plaintiff's legitimate expectancy from being fulfilled; and (4) Plaintiff has been damaged as a result of FBLG's interference. <u>Delloma Consolidation Coal Co.</u>,

996 F.2d 168, 170-71 (7th Cir. 1993).  <u>Delloma</u> further states that, "if the defendant's interference is privileged, the plaintiff bears the burden of proving that the defendant's conduct was malicious," meaning "intentional[] and without justification." <u>Id</u>. at 171.  Accordingly, Plaintiff has also alleged that FBLG "intentionally and improperly" interfered with Plaintiff's expectancy, and acted with malice.  (Am. Compl. ¶¶ 74, 75).

The Court finds that the facts alleged in the Complaint, taken as true, are sufficient to show that Plaintiff had a reasonable expectation that its business relationship with Christia would continue.  <u>See, e.g.</u>, <u>Am. Compl.</u> ¶¶ 20-23.  FBLG argues the contrary by insisting that Plaintiff knew it no longer had a contract with Christia after October 29, 1999.  This argument ignores the facts pleaded in the Complaint and, therefore, will be disregarded.  Moreover, FBLG's argument that it was privileged to interfere with Plaintiff's business relationship is an affirmative defense. <u>See</u> <u>Cromeens, Holloman, Sibert, Inc. v. AB Volvo</u>, 349 F.3d 376, 398-399 (7th Cir. 2003) (recognizing that courts characterize privilege as an affirmative defense); <u>Delloma</u>, 996 F.2d at 170 (referring to privilege as an affirmative defense).  Affirmative defenses like privilege are not properly raised in a motion to dismiss.  <u>See</u> <u>Fed. R. Civ. P.</u> Rule 8(c) (noting the affirmative defenses may be raised in a "pleading to a preceding pleading"); <u>Haven v. Polska</u>, 215 F.3d 727, 732 (7th Cir. 2000) ("A motion to dismiss is not a responsive pleading.").

Because Plaintiff has stated a claim for tortious interference with prospective economic advantage, FBLG's motion to dismiss Count V is denied.

### C.     Count XI

FBLG's motion to dismiss Count XI (civil conspiracy) is denied for the same reasons this Court denied Christia's motion to dismiss Count XI.

## IV.     CONCLUSION

For the foregoing reasons, Christia's motion to dismiss is **GRANTED with respect to Count VII of the Complaint (violation of the Illinois Consumer Fraud and Deceptive Business Practices Act), and DENIED with respect to all other Counts.  FBLG's motion to dismiss is DENIED.**


Enter:


/s/ David H. Coar_____
David H. Coar
United States District Judge

Dated: **September 29, 2005**