## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| P.H. INTERNATIONAL TRADING COMPANY d/b/a HANA K. FASHIONS )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>CHRISTIA CONFEZIONI S.p.A., an Italian )<br>corporation and FBLGINC, Corp., a<br>Canadian corporation, and FBLG, Inc., a<br>Delaware corporation,<br>)<br>)<br>**Defendants.** ) | No. 04-C-0903<br><br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Before this court are the summary judgment motions (Doc. Nos. 147, 151) of Defendants FBLG, Inc. and FBLGINC, Corp. (collectively "FBLG") and Defendant Christia Confezioni S.p.A. ("Christia"), seeking to dismiss the first amended complaint (Doc. No. 34) of Plaintiff P. H. International Trading Company d/b/a Hana K. Fashions ("Plaintiff" or "Hana K."). For the reasons stated below, Defendant FBLG's motion for summary judgment is GRANTED. Additionally, for the reasons set forth below, Defendant FBLG's motion for summary judgment is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff has failed to timely file a timely Rule 56.1(b) statement, opting instead to file only a cursory response to the motions for summary judgment. *See* Response by Plaintiff P.H. International Trading Company (Doc. No. 161). Plaintiff therefore failed to provide the specific references to supporting or contradicting materials required under Rule 56. *See* Local Rule 56.1(b)(3)(B) (the opposing party shall file a "response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"); Local Rule 56.1(b)(3)(C) (non-movant's submission will contain "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon").

The consequence of these improper responses is that, for each, Defendants' version of the facts is deemed admitted. *See id.* ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission....We will not take into consideration those additional facts improperly inserted into [the parties'] pleadings."); *Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992) ( "Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted ....[A] responsive statement that is a flat denial, without reference to supporting materials, or with incorrect or improper references, and containing irrelevant additional facts, has no standing....").

Therefore, the relevant factual background is derived entirely from Defendants' Rule 56.1(a)(3) statements, or uncontested factual statements from the amended complaint.

## A. The Parties

Plaintiff P.H. International Trading Company d/b/a Hana K. is a New York corporation owned by Hana and Pierre Lang that conducts business in Illinois. Hana K. is a wholesale seller of high-end coats. FBLG Facts ¶ 4. Defendant Christia is an Italian corporation owned by Manlio Sorio and operated by Francesco Sorio that has its principal place of business in Italy. Christia Facts ¶¶ 1, 2. Christia is in the business of manufacturing high-end shearling coats. *Id.* ¶ 1. Defendant FBLGINC, Corp., a Canadian corporation located in Canada, is a wholesale distributor and marketer of shearling coats. FBLG Facts ¶ 1. Defendant FBLG Inc. is a Delaware corporation engaged in marketing and internet work, with its principal place of business in Wilmington, Delaware. *Id.*

## B. The Contractual Relationship between Hana K. and Christia

On April 21, 1989, Hana K. and Christia entered into a contract under which Hana K.[1] agreed to become the exclusive North American distributor of Christia shearling products. Am. Compl. ¶ 10. In exchange, Christia exclusively supplied Hana K. with shearling products for distribution in North America. *Id.* ¶ 11. In furtherance of this exclusive relationship, Hana K. marketed Christia's coats in North America. *Id.* ¶¶ 12, 13. In addition, Hana K.'s business card incorporated Christia's name and logo. *Id.* ¶ 14.

---

[1] Defendant Christia has asserted that this contract was actual entered by The Fur Salon, Ltd., another business affiliated with Pierre and Hana Lang. Christia Facts. ¶ 10. However, this distinction, and the terms of this 1989 Agreement, have no impact on these proceedings.

On May 1, 1995, Hana K. and Christia renewed their contractual relationship. "Exclusive Distributorship Agreement," Christia Facts Appendix Ex. 6 ("1995 Agreement"). This agreement stipulated: that Hana K. was the exclusive distributor of Christia garments in the United States and Canada; that Christia would otherwise sell, transfer, or deliver its garments in those countries; that Hana K. would not produce or directly market similar products through any intermediaries; and that Hana K. was required to purchase product from Christia and promote its sale in trade-fairs and expositions. Am. Compl. ¶ 15. Hana K. was compensated for its services through the sale of the shearling garments and received no additional compensation for its marketing efforts. Christia Facts ¶¶ 8, 9.

Under its terms, the Agreement expired after five years. However, at expiration the Agreement automatically renewed for an additional five-year term unless one of the parties expressly notified the other of its intent not to renew. *Id.* ¶ 16. The notice of intent to terminate had to be communicated via registered mail at least six months prior to the expiration of the initial five-year term:

> This Agreement shall remain in force for other periods of five years, running from the date on which it is executed and, on its expiry, shall be tacitly renewed for a further five years, excepting for any notice to the contrary provided by one of the parties hereto, to be communicated, at least, six months prior to the expiry of the five-year period."

May 1, 1999 Agreement (Hana K. Transl.) ¶ 8.[2] During the term of this Agreement, Christia became frustrated with Hana K. regarding late payments and other problems, and memorialized

---

[2]Defendants offer a slightly different translation, most significantly replacing "to be communicated" with "to be sent." *See* May 1, 1999 Contract (Hana K. Transl.) ¶ 8. However, the discrepancy is not dispositive.

its frustrations in a September 20, 1999 letter referencing the party's contractual obligations. Christia Facts ¶ 18-20.

The initial term of the 1995 Agreement between Christia and Hana K. would have expired on April 30, 2000. As such, the Agreement would automatically renew for another five years unless one of the parties communicated its intention to the contrary by October 31, 1999. *Id.* ¶ 16. In a letter dated and mailed from Italy by registered mail on October 29, 1999, Christia stated that the contract with Hana K. would not automatically renew for an additional five years after the initial five-year term expired. *Id.* ¶ 20. Hana K. received the letter on November 10, 1999. *Id.* ¶ 22.

The October 29, 1999 letter also initiated the negotiation of a new contract. *Id.* ¶ 21. Correspondence began at that point and lasted until May of 2000, during which Christia and Hana K. attempted to determine mutually-acceptable terms. *Id.* ¶¶ 23-30. At no time after October 29, 1999, did Christia expressly indicate to Hana K. that the parties had an exclusive distribution agreement. *Id.* ¶ 32.

Subsequent to receiving the letter, Hana K. continued to distribute Christia products in North America. *Id.* ¶ 33. In fact, in catalogues Christia continued to represent that Hana K. was "the distributor for Christia in North America." Am. Compl. ¶ 20. In a letter dated January 2002, Christia inquired about Hana K.'s marketing and advertising plans for a particular trade show. *Id.* ¶ 22. Hana K. continued to order shearling products from Christia, and Christia continued to supply shearling products to Hana K. *Id.* ¶ 23. Hana K. also exhibited shearling garments from manufacturers other than Christia at trade shows beginning in February 2000. Christia Facts ¶¶ 34-35, 43-44.

### C. The Alleged Wrongdoing by Christia and FBLG

On behalf of FBLG, Leonard Gorski contacted Christia on numerous occasions during the initial five-year term of the 1995 Agreement. FBLG Facts ¶¶ 29-30. Following the termination of its 1995 Hana K. Agreement, Christia and FBLG began discussing the possibility of working together, and reached a distribution agreement in February of 2002. *Id.* ¶¶ 38-39. Before entering this agreement, FBLG received confirmation from Christia that the exclusive distribution agreement with Hana K. was no longer in effect. *Id.* ¶ 33.

The Montreal Fur Fair took place between April 28, 2002 and May 1, 2002. Two weeks before the Fair, Christia informed Hana K. that Christia would begin supplying shearling products to FBLG. Am. Compl. ¶ 28. During the Fair, FBLG began showing Christia products, while Hana K. also showed Christia products. FBLG Facts ¶ 33.

In May 2002, Lang traveled to Italy to meet with Christia. Am. Compl. ¶ 30. On June 4, 2002, Christia notified Hana K. that it would supply FBLG alone with products for North American distribution. FBLG Facts ¶ 40. On June 10, 2002, Pierre Lang wrote to an Italian businessman requesting that he intercede on the American company's behalf, stating in part "[t]he last contract expired about three years ago and was never renewed." FBLG Facts. ¶ 41.

On July 6, 2002, Hana K. filed a Petition for Urgent Measures with an Italian court, claiming that Christia's notice of non-renewal was not timely. *Id.* ¶ 42. On October 21, 2002, the Italian court rejected Hana K.'s petition and found that Christia's notification was timely. *Id.* ¶ 43.

D. **Complaint**

Plaintiff's Complaint lists the following counts against Defendants Christia and FBLG: Breach of contract or, in the alternative, promissory estoppel against Christia (Counts I and III, respectively); equitable estoppel against Christia (Count IV); tortious interference with contract or, in the alternative, tortious interference with prospective economic advantage against FBLG (Counts II and V); common law fraud and constructive fraud against Christia (Counts VI and VIII)[3]; *quantum meruit* and unjust enrichment against Christia (Counts IX and X); civil conspiracy against Christia and FBLG (Count XI); and specific performance against Christia (Count XII).

## II. STANDARD OF REVIEW

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

---

[3]Plaintiff had also brought a claim against Christia under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VII), but this was dismissed.

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004).

The Seventh Circuit has also made it clear that "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) as stating that "[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (clarifying that such evidence is valid to the extent that it is "based on personal knowledge and [sets] forth specific facts showing that there is a genuine issue for trial").

### III. ANALYSIS OF CHRISTIA'S MOTIONS

Christia attacks all counts of Plaintiff's complaint, alleging that summary judgment is appropriate with respect to: the breach of contract and specific performance claims (Counts I and XII) because notice of non-renewal of the contract was timely; the estoppel and fraud claims (Counts III, IV, VI and VIII) because no unambiguous promises were made following the expiration of the 1995 agreement; the quantum meruit and unjust enrichment claims (Counts IX and X) because there is no evidence of wrongful benefit; and the conspiracy claim (Count XI) because there is no evidence of an agreement to achieve a wrongful purpose.

#### A. Non-Renewal of the Contract

Plaintiff maintains that the 1995 Agreement was renewed automatically at its expiration in April of 2000, due to Christia's failure to communicate a desire to the contrary according to the terms of the contract. Defendant responds that the letter sent on October 29, 1999, properly cancelled the renewal.

The 1995 Agreement contained a choice-of-law clause indicating that it "has been drawn up in compliance with the Laws of the State of New York and shall be governed by Italian Law." Pl.'s Rule 56.1 Appendix Ex. 8, ¶ 14 (Jarkins Transl.). This Court applies Illinois law to determine the validity of this clause, and in Illinois, a contract's choice-of-law clause is respected as long as it is not contrary to public policy. *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994). Therefore, Italian law is to be used in determining the requirements on and validity of the rejection of renewal. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1413 (N.D. Ill. 1996) ("the parties' choice of law will be given effect unless it would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state."); *see also Champagnie v. W.E. O'Neil Constr. Co.*, 77 Ill.App.3d 136, 139, 395 N.E.2d 990, 992, 32 Ill.Dec. 609, 611 (1979) (citing 16 Am.Jur.2d Conflict of Laws § 6, at 16; 17 C.J.S. Contracts § 16, at 619) ("[A] court should not refuse to apply the law of a foreign State ... unless it is contrary to pure morals or abstract justice, or unless the enforcement would be of evil example and harmful to its own people.").

This Court must therefore determine the point at which registered mail is deemed "communicated" under Italian law. It is clear that the letter of non-renewal was sent on October 29, 1999, and it is undisputed that Plaintiff did not receive it until after that deadline of October 31, 1999. There is sufficient evidence in the record from which it can be determined as a matter of law that, in Italy, the date of sending is considered the effective date of postal communication. *See generally* Perbellini Decl. (citing Italian caselaw); *see also* Court of Bassano del Grappa Opinion (finding Christia's notice of non-renewal effective). Plaintiff has failed to frame its arguments on this issue according to Italian law, and does not challenge the ruling of the Italian

court or the assertions made by Perbellini, an Italian attorney whose qualifications are not in doubt. Therefore, this Court sees no reason to reconsider the Italian court's finding that the notice of non-renewal was properly given, and that the Agreement therefore did not renew automatically.

Plaintiff also maintains that the October 29, 1999 letter, as written, did not clearly express Christia's interest in avoiding the automatic renewal. This point of contention is caused in part by the fact that the letter, as translated, leaves the subject of the sentence unclear. The translation cited by Plaintiff reads: "the Agreement, itself, is not intended to be automatically renewed." Pl.'s Facts Appendix Ex. 6; Perbellini Decl. ¶ 3. This could be seen as either an observation regarding one of the conditions of the Agreement, or an express decision to counter the automatic renewal that would otherwise be triggered. However, the former interpretation makes no intuitive sense - why would Christia write a letter, two days before the deadline for notice of non-renewal, simply interpreting a clause in a four-and-a-half year old contract? In addition, the language was considered adequate in both the Italian court that considered the letter, *see* Court of Bassano del Grappa Opinion, and the Italian lawyer who reviewed it, *see* Perbellini Decl., both of whom considered the language in its original form.

This conclusion is supported by the actions of the Plaintiff. As late as January 20, 2000, the two parties appear to have been negotiating a new contract. Christia Facts ¶¶ 23-30. It is counter-intuitive to suppose that both parties would have continued haggling over contractual terms for three months if the automatic renewal had already been triggered.

### B. Promises and Conduct Following Termination of 1995 Agreement

Plaintiff also maintains that, regardless of whether or not this Court gives effect to the Agreement's automatic renewal according to the contractual terms, Christia's course of conduct toward Hana K. demands that renewal be implied. In support, Hana K. points to several of Christia's actions subsequent to October 29, 1999, including: a series of shearling coat purchases; Christia's continued represention "to Hana K. and to the world that Hana K. was the distributor for Christia in North America," Am. Compl. ¶ 20, Exs. G, H, I; and presure put on Hana K. to advertise, exhibit at particular trade shows, and purchase more of Christia's product, *id.* ¶¶ 21-24. Christia responds that it made no explicit representation regarding the exclusivity of the relationship, and that its dealings with Hana K. following the termination of the 1995 Agreement were solely on "an at-will, non-exclusive basis pursuant to its standard terms of sale."

The conduct cited in support of an implied renewal between the parties is scant and unconvincing. Plaintiff repeatedly points to Christia actions taken "subsequent to October 29, 1999," *see generally*, Am. Compl. ¶¶ 20-23, rather than actions taken following the end of the 1995 Agreement in April of 2000, and generally obscures the relevant dates. As a result, some of the cited actions are properly viewed as efforts to meet the demands of the previous agreement, rather than any indication of renewal of the Agreement. For example, Hana K. lists three catalogues as evidence that Christia communicated "to Hana K. and to the world that Hana K. was the distributor for Christia in North America." *Id.* ¶ 20. However, only one of these catalogues actually fell outside the time frame of the 1995 Agreement, and therefore only that catalogue reasonably provides support for Plaintiff's argument. Christia likewise overstates the

"pressure" put on Hana K. to advertise or market; this evidence boils down to a single letter requesting that Hana K. inform Christia "if you're going to the Fashion Coterie and in which days the fair is," and noting that "there is an interesting issue in WWD magazine to put advertising for a good price." Am. Compl. ¶ 22. The weight of this evidence is further undermined, in that Christia's interest in having Hana K. push its product does not prove an exclusive relationship, but more simply evidences a desire to have Hana K. sell more of its coats.

Plaintiff attempts to bolster its arguments by claiming evidence that it does not have. Its Amended Complaint stated that Christia "specifically represented to Hana K. that it would continue to use Hana K. as Christia's exclusive North American distributor," and made "specific and knowing communications to that effect." Am. Compl. ¶ 21. The record contains no such evidence, other than those discussions found within the context of unresolved contract negotiations. At best, Plaintiff has pointed to a letter that it maintains "admits that an arrangement was in force and effect between Christia and P.H. International," but which in truth mentions only a "discussion about the contract." Appendix Ex. 35.

In addition, Plaintiff's actions undermine any argument that Hana K. itself believed that it was in an exclusive contractual relationship with Christia following April of 2000. Most obviously, Hana K. expressly stated in 2002 that "[t]he last contract expired about three years ago and was never renewed." FBLG Facts. ¶ 41. In addition, Hana K. itself breached the alleged exclusivity by displaying other shearling coats at trade fairs in 2001 and 2002. Christia Facts ¶¶ 34-35, 43-44.

The conduct between the parties following the termination of the 1995 Agreement amounts to a round of failed contract negotiations, a series of sales contracts that were no more

than at-will and non-exclusive, and general hostilities between parties of a once-profitable, but now terminated, exclusive business arrangement. Plaintiff has failed to show any evidence of why it might reasonably have thought the relationship was intended to be exclusive after April of 2000. Even if this record could somehow be seen as grounds for finding an agreement regarding exclusivity between the parties, Plaintiff has advanced no evidence of what the terms of such a contract might be: the 1995 Agreement's conditions could not be adopted because they were expressly rejected by one of the parties; the parties' contract negotiations of early 2000 did not coalesce into a mutual understanding of terms; and their post-termination sales make no indication of exclusivity from which a definite and more expansive agreement could be implied. Because an exclusive contract cannot be enforced without terms of adequate specificity, even if an agreement were found it would be an unenforceable one.

### C. Contractual claims

There was no enforceable agreement between Hana K. and Christia after the termination of the 1995 Agreement in April of 2000. Therefore, summary judgment is GRANTED with respect to Plaintiff's breach of contract and specific performance claims in Counts I and XII.

### D. Claims of Estoppel and Fraud

There was no promise or false statement that Hana K. would continue to serve as Christia's exclusive North American distributor. Both Pierre and Hana Lang admitted Christia never stated that an exclusive relationship was in place after April of 2000, and instead rely on a general notion that they "[didn't] think there would have been any need for such a thing." P. Lang Dep. at 158; *see also* H. Lang Dep. at 19. Counts III, IV, and VI all rely on Plaintiff's ability to prove that Christia made such a representation: promissory estoppel (Count III)

requires "a promise unambiguous in terms...[with] reliance being expected and foreseeable by the promisor," *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 (7th Cir. 1991); equitable estoppel (Count IV) requires "a material misrepresentation of past or present circumstances," *R. S. Bennett & Co., Inc. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182 (7th Cir. 1979); and common law fraud (Count VI) requires "a false statement of material fact," *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005). Because there was no promise or statement on which these claims can be based, summary judgment is GRANTED with respect to all of these counts.

Additionally, constructive fraud (Count VIII) under Illinois law requires a fiduciary relationship between the parties, and Plaintiff has entirely failed to establish that such a relationship existed between them following the termination of the 1995 Agreement, other than sales contracts that appear to have been satisfied. Therefore, summary judgment is GRANTED with respect to Count VIII.

### E.     Wrongful Benefit

Finally, Hana K. maintains that its efforts to establish Christia's brand in the relevant markets of North America provide grounds for quantum meruit (Count IX) or unjust enrichment (Count X) claims. Both of these claims require that injustice would result from allowing a conveyed benefit to remain with a particular party. *See, e.g., Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990) (quantum meruit); *HPI Health Care Serv., Inc., v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989). However, to the extent that the benefits were conveyed according to the terms of the 1995 Agreement, both parties benefitted from any marketing that Hana K. did. Subsequent to that Agreement's termination in April of 2000, the exclusive distributorship was no longer in place,

but Hana K. would still benefit itself by increasing sales. As to the more ethereal "branding" according to which Plaintiff demands recompense, to the extent that Hana K. continued to build the reputation of Christia in the absence of an exclusive arrangement, it did so by its own choice rather than any compulsion from Christia. Therefore, no injustice need be remedied for benefits wrongly conveyed, and Christia's motions for summary judgment are GRANTED with respect to Counts IX and X.

## IV.   ANALYSIS OF FBLG'S MOTIONS

FBLG seeks summary judgment on Count II (tortious interference with a contractual relationship), Count V (tortious interference with prospective economic advantage), and reiterates Christia's arguments against Count XI (civil conspiracy) of the Complaint. FBLG argues that the interference claims of Counts II and V are untenable because no contract existed between Christia and Hana K. and there was no reasonable expectation of a continued business relationship.

It has already been established that there was no enforceable contract between Christia and Hana K. at any point following the termination of the 1995 Agreement. None of the claims against FBLG warrants substantial consideration in light of this finding. There was no enforceable contract, real or implied, with which FBLG could have interfered after the 1995 Agreement, and no evidence to support interference before the Agreement's expiration. Summary judgment is therefore GRANTED with respect to Count II, claiming contract interference. *Celotex*, 477 U.S. at 322 (failure of any essential element warrants summary judgment).

Plaintiff has also claimed tortious interference with prospective economic advantage. However, to be successful this claim requires that Defendant knew Plaintiff had a valid expectancy of a continued business relationship. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993). Plaintiff has failed to rebut evidence that FBLG was assured by Christia that the exclusive distributorship had expired. FBLG Facts ¶ 33. Therefore, summary judgment is GRANTED with respect to Count V's claims of interference with economic advantage.

Finally, Plaintiff has alleged civil conspiracy but has provided no evidence of an agreement to achieve a wrongful purpose. The principle elements of a civil conspiracy are an agreement between the parties to inflict wrong or injury on another and an overt act resulting in damages. *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). While Plaintiff has established that the Defendants met both before and after the termination of the 1995 Agreement, it has advanced no evidence that the meetings involved a malicious intent or resulted in a deleterious effect. The Defendants have plainly stated that no sales took place between them while the exclusive distributorship was still in place, and this has not been contradicted. It is similarly clear that tensions between Christia and Hana K. were long-running, and Christia therefore needed no prodding from FBLG to terminate and try to renegotiate its contract with Hana K. When those negotiations fell through, FBLG took steps to place itself at a competitive advantage over Plaintiff, but at that point FBLG and Hana K. were simply competing in the open market for Christia's product. Plaintiff has provided no evidence that this amounted to anything more. Summary judgment is therefore GRANTED with respect to both parties on Count XI's claim of civil conspiracy.

## IV. CONCLUSION

For the foregoing reasons, Christia's motion for summary judment is GRANTED, and FBLG's motion for summary judgment is GRANTED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: March 29, 2007