MHN

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

P.H. INTERNATIONAL TRADING COMPANY )
d/b/a HANA K )
                             )       No. 04 C 903
        Plaintiff,      )
   v.                    )       Hon. David H. Coar
                              )

CHRISTIA CONFEZIONI S.P.A., an Italian )
Corporation, FBLG INC., a Delaware Corporation )
and FBLGINC Corp., a Canadian Corporation )

        Defendants.

**FILED**

SEP 0 4 2009 TC
9-4-2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MOTION FOR RELIEF FROM JUDGMENT AND REVERSAL FROM MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 60

Hana Lang and Pierre Lang Pro Se hereby move this Honorable Court for Relief from Judgment denying Motion to Vacate Summary Judgment. In support of this Motion, we, Hana Lang and Pierre Lang state as follows:

### Relief is sought from these Judgments

1. On March 29th, 2007 Memorandum Opinion and Order was entered granting Defendants' Motion for Summary Judgment. (Exhibit 1)

2. On October 5th, 2007 Plaintiff's Motion to Vacate Summary Judgment was denied. (Exhibit 2)

## Injustices that resulted from this Court's Judgments

3. Ever since the Motion to Vacate was denied on October 5th, 2007, due to and based on this Court's decision we, Hana and Pierre Lang have found ourselves in an ever growing maze of lawsuits against us "personally" where judgment was obtained by lifting the corporate veil leaving us utterly destitute and in complete darkness. Hana Lang is 53 years old; Pierre Lang is 55 years old. We have three children. We have personally filed for unemployment benefits for the first time in our life.

## Background

4. The fundamental root of the issue according to this Court was to determine whether the contract in question had been renewed and that this determination depended on the laws of Italy that controlled and the terms of the contract.

5. It was incumbent on this Court to determine how Italian law interprets the word "communicated" and if it was a timely notice according to the terms of the contract.

## The New Evidence

6. In an effort to solve this chaos, Hana and Pierre Lang 8 months ago heeded the advice of a friend. Having appreciated this friend's suggestion, we took the decision to follow his advice. Consequently we approached one of the lawyers who was involved in the case in Italy. We spoke with him on the phone. He agreed with us on the subject, and volunteered to write us an affidavit. (Exhibit 4)

7. After we read the affidavit, and we saw that the beacon of light is real and live, we took a decision to proceed with that light. We went for advice to a lawyer in the Pro Se Assistance Program at the Dirksen Building.

8. This lawyer suggested that we go to the library downstairs where we met the librarian who told us that we should go to the Cook County Law Library to look for the information that we were seeking.

9. August 21, 2009, we headed directly to the Cook County Law Library where with the assistance of Executive Law Librarian Mr. Bennie E. Martin and his staff we were given the 2008 Release of The Italian Civil Code in English and we were told that it had been available in the library since 1970. The Articles cited have never been revised. In the chapter titled "Requisites of Contract" it reads as follows:

> **Art. 1334. Efficacy of Unilateral Acts.** *Unilateral Acts take effect from the time when they come to the knowledge of the person to whom they are directed.*
> **Art. 1335. Presumption of knowledge.** *An offer, acceptance, their revocation and any other declaration directed to a given person, are deemed to be known at the moment they reach the address of the person to whom they are directed,* unless he proves that, without his fault, it was impossible for him to have notice of them. (The Italian Civil Code, translated by Mario Beltramo, Published by Oceana, New York, p. 25, Emphasis supplied. Exhibit 3)

10. We realized that the ray of light is potentially turning into a floodlight because Italian law is perfectly clear and easily accessible.

11. In support of the applicable and relevant Italian law we are also providing this Court the joint affidavit of Italian Law Professor E. Camilleri and his Ph.D student Claudia Di Marzo who is a lawyer admitted to the Bar Association of Palermo in Italy. (Affidavit and CV Exhibit 5)

12. The judge in Italy was egregiously wrong and Christia's Italian lawyer's Declaration was misleading. These basis were relied upon by this Court to render its decision.

13. We have committed no fraud. Through the entire period we acted honestly with the understanding and the belief that the contract is valid and alive.

For all of these reasons and in the interest of justice, Hana Lang and Pierre Lang respectfully request that this Honorable Court grant our Motion for Relief from Judgment and reverse its decision granting the Motion for Summary Judgment and the Motion to Vacate and grant any additional relief that is just and appropriate under the circumstances. We ask this Court to relieve us from its previous ruling before further courts rely on this Court's interpretation of Italian law.

Submitted Respectfully:

Hana Lang, Pro Se

Pierre Lang, Pro Se

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| P.H. INTERNATIONAL TRADING COMPANY d/b/a HANA K. FASHIONS | ) ) ) | |
| Plaintiff, | ) ) ) | No.  04-C-0903 |
| v. | ) ) | |
| CHRISTIA CONFEZIONI S.p.A., an Italian corporation and FBLGINC, Corp., a Canadian corporation, and FBLG, Inc., a Delaware corporation, | ) | HONORABLE DAVID H. COAR |
| | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this court are the summary judgment motions (Doc. Nos. 147, 151) of Defendants

FBLG, Inc. and FBLGINC, Corp. (collectively "FBLG") and Defendant Christia Confezioni

S.p.A. ("Christia"), seeking to dismiss the first amended complaint (Doc. No. 34) of Plaintiff P.

H. International Trading Company d/b/a Hana K. Fashions ("Plaintiff" or "Hana K."). For the

reasons stated below, Defendant FBLG's motion for summary judgment is GRANTED.

Additionally, for the reasons set forth below, Defendant FBLG's motion for summary judgment

is GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff has failed to timely file a timely Rule 56.1(b) statement, opting instead to file only a cursory response to the motions for summary judgment. *See* Response by Plaintiff P.H. International Trading Company (Doc. No. 161). Plaintiff therefore failed to provide the specific references to supporting or contradicting materials required under Rule 56. *See* Local Rule 56.1(b)(3)(B) (the opposing party shall file a "response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"); Local Rule 56.1(b)(3)(C) (non-movant's submission will contain "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon").

The consequence of these improper responses is that, for each, Defendants' version of the facts is deemed admitted. *See id.* ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission....We will not take into consideration those additional facts improperly inserted into [the parties'] pleadings."); *Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992) ( "Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted ....[A] responsive statement that is a flat denial, without reference to supporting materials, or with incorrect or improper references, and containing irrelevant additional facts, has no standing....").

Therefore, the relevant factual background is derived entirely from Defendants' Rule 56.1(a)(3) statements, or uncontested factual statements from the amended complaint.

### A.    The Parties

Plaintiff P.H. International Trading Company d/b/a Hana K. is a New York corporation owned by Hana and Pierre Lang that conducts business in Illinois. Hana K. is a wholesale seller of high-end coats. FBLG Facts ¶ 4. Defendant Christia is an Italian corporation owned by Manlio Sorio and operated by Francesco Sorio that has its principal place of business in Italy. Christia Facts ¶¶ 1, 2. Christia is in the business of manufacturing high-end shearling coats. *Id.* ¶ 1. Defendant FBLGINC, Corp., a Canadian corporation located in Canada, is a wholesale distributor and marketer of shearling coats. FBLG Facts ¶ 1. Defendant FBLG Inc. is a Delaware corporation engaged in marketing and internet work, with its principal place of business in Wilmington, Delaware. *Id.*

### B.    The Contractual Relationship between Hana K. and Christia

On April 21, 1989, Hana K. and Christia entered into a contract under which Hana K.[1] agreed to become the exclusive North American distributor of Christia shearling products. Am. Compl. ¶ 10. In exchange, Christia exclusively supplied Hana K. with shearling products for distribution in North America. *Id.* ¶ 11. In furtherance of this exclusive relationship, Hana K. marketed Christia's coats in North America. *Id.* ¶¶ 12, 13. In addition, Hana K.'s business card incorporated Christia's name and logo. *Id.* ¶ 14.

---

[1]Defendant Christia has asserted that this contract was actual entered by The Fur Salon, Ltd., another business affiliated with Pierre and Hana Lang. Christia Facts. ¶ 10. However, this distinction, and the terms of this 1989 Agreement, have no impact on these proceedings.

On May 1, 1995, Hana K. and Christia renewed their contractual relationship.

"Exclusive Distributorship Agreement," Christia Facts Appendix Ex. 6 ("1995 Agreement").

This agreement stipulated: that Hana K. was the exclusive distributor of Christia garments in the

United States and Canada; that Christia would otherwise sell, transfer, or deliver its garments in

those countries; that Hana K. would not produce or directly market similar products through any

intermediaries; and that Hana K. was required to purchase product from Christia and promote its

sale in trade-fairs and expositions. Am. Compl. ¶ 15. Hana K. was compensated for its services

through the sale of the shearling garments and received no additional compensation for its

marketing efforts. Christia Facts ¶¶ 8, 9.

Under its terms, the Agreement expired after five years. However, at expiration the

Agreement automatically renewed for an additional five-year term unless one of the parties

expressly notified the other of its intent not to renew. *Id.* ¶ 16. The notice of intent to terminate

had to be communicated via registered mail at least six months prior to the expiration of the

initial five-year term:

> This Agreement shall remain in force for other periods of five years,
> running from the date on which it is executed and, on its expiry, shall be
> tacitly renewed for a further five years, excepting for any notice to the
> contrary provided by one of the parties hereto, to be communicated, at
> least, six months prior to the expiry of the five-year period."

May 1, 1999 Agreement (Hana K. Transl.) ¶ 8.[2] During the term of this Agreement, Christia

became frustrated with Hana K. regarding late payments and other problems, and memorialized

---

[2]Defendants offer a slightly different translation, most significantly replacing "to be communicated" with "to be sent." *See* May 1, 1999 Contract (Hana K. Transl.) ¶ 8. However, the discrepancy is not dispositive.

its frustrations in a September 20, 1999 letter referencing the party's contractual obligations.
Christia Facts ¶ 18-20.

The initial term of the 1995 Agreement between Christia and Hana K. would have
expired on April 30, 2000. As such, the Agreement would automatically renew for another five
years unless one of the parties communicated its intention to the contrary by October 31, 1999.
*Id.* ¶ 16. In a letter dated and mailed from Italy by registered mail on October 29, 1999, Christia
stated that the contract with Hana K. would not automatically renew for an additional five years
after the initial five-year term expired. *Id.* ¶ 20. Hana K. received the letter on November 10,
1999. *Id.* ¶ 22.

The October 29, 1999 letter also initiated the negotiation of a new contract. *Id.* ¶ 21.
Correspondence began at that point and lasted until May of 2000, during which Christia and
Hana K. attempted to determine mutually-acceptable terms. *Id.* ¶¶ 23-30. At no time after
October 29, 1999, did Christia expressly indicate to Hana K. that the parties had an exclusive
distribution agreement. *Id.* ¶ 32.

Subsequent to receiving the letter, Hana K. continued to distribute Christia products in
North America. *Id.* ¶ 33. In fact, in catalogues Christia continued to represent that Hana K. was
"the distributor for Christia in North America." Am. Compl. ¶ 20. In a letter dated January
2002, Christia inquired about Hana K.'s marketing and advertising plans for a particular trade
show. *Id.* ¶ 22. Hana K. continued to order shearling products from Christia, and Christia
continued to supply shearling products to Hana K. *Id.* ¶ 23. Hana K. also exhibited shearling
garments from manufacturers other than Christia at trade shows beginning in February 2000.
Christia Facts ¶¶ 34-35, 43-44.

## C.    The Alleged Wrongdoing by Christia and FBLG

On behalf of FBLG, Leonard Gorski contacted Christia on numerous occasions during the initial five-year term of the 1995 Agreement.  FBLG Facts ¶¶ 29-30.  Following the termination of its 1995 Hana K. Agreement, Christia and FBLG began discussing the possibility of working together, and reached a distribution agreement in February of 2002.  *Id.* ¶¶ 38-39. Before entering this agreement, FBLG received confirmation from Christia that the exclusive distribution agreement with Hana K. was no longer in effect.  *Id.* ¶ 33.

The Montreal Fur Fair took place between April 28, 2002 and May 1, 2002.  Two weeks before the Fair, Christia informed Hana K. that Christia would begin supplying shearling products to FBLG.  Am. Compl. ¶ 28.  During the Fair, FBLG began showing Christia products, while Hana K. also showed Christia products. FBLG Facts ¶ 33.

In May 2002, Lang traveled to Italy to meet with Christia.  Am. Compl. ¶ 30.  On June 4, 2002, Christia notified Hana K. that it would supply FBLG alone with products for North American distribution.  FBLG Facts ¶ 40.  On June 10, 2002, Pierre Lang wrote to an Italian businessman requesting that he intercede on the American company's behalf, stating in part "[t]he last contract expired about three years ago and was never renewed." FBLG Facts. ¶ 41.

On July 6, 2002, Hana K. filed a Petition for Urgent Measures with an Italian court, claiming that Christia's notice of non-renewal was not timely.  *Id.* ¶ 42.  On October 21, 2002, the Italian court rejected Hana K.'s petition and found that Christia's notification was timely.  *Id.* ¶ 43.

**D.    Complaint**

Plaintiff's Complaint lists the following counts against Defendants Christia and FBLG: Breach of contract or, in the alternative, promissory estoppel against Christia (Counts I and III, respectively); equitable estoppel against Christia (Count IV); tortious interference with contract or, in the alternative, tortious interference with prospective economic advantage against FBLG (Counts II and V); common law fraud and constructive fraud against Christia (Counts VI and VIII)[3]; *quantum meruit* and unjust enrichment against Christia (Counts IX and X); civil conspiracy against Christia and FBLG (Count XI); and specific performance against Christia (Count XII).

**II.    STANDARD OF REVIEW**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

---

[3]Plaintiff had also brought a claim against Christia under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VII), but this was dismissed.

-7-

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004).

The Seventh Circuit has also made it clear that "self-serving affidavits, without any factual

support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v.*

*Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) as stating that "[t]he object of [Rule 56(e) ] is not

to replace conclusory allegations of the complaint or answer with conclusory allegations of an

affidavit."); *see also Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (clarifying that such

evidence is valid to the extent that it is "based on personal knowledge and [sets] forth specific

facts showing that there is a genuine issue for trial").

## III.   ANALYSIS OF CHRISTIA'S MOTIONS

Christia attacks all counts of Plaintiff's complaint, alleging that summary judgment is

appropriate with respect to: the breach of contract and specific performance claims (Counts I and

XII) because notice of non-renewal of the contract was timely; the estoppel and fraud claims

(Counts III, IV, VI and VIII) because no unambiguous promises were made following the

expiration of the 1995 agreement; the quantum meruit and unjust enrichment claims (Counts IX

and X) because there is no evidence of wrongful benefit; and the conspiracy claim (Count XI)

because there is no evidence of an agreement to achieve a wrongful purpose.

### A.   Non-Renewal of the Contract

Plaintiff maintains that the 1995 Agreement was renewed automatically at its expiration

in April of 2000, due to Christia's failure to communicate a desire to the contrary according to

the terms of the contract.  Defendant responds that the letter sent on October 29, 1999, properly

cancelled the renewal.

The 1995 Agreement contained a choice-of-law clause indicating that it "has been drawn up in compliance with the Laws of the State of New York and shall be governed by Italian Law." Pl.'s Rule 56.1 Appendix Ex. 8, ¶ 14 (Jarkins Transl.). This Court applies Illinois law to determine the validity of this clause, and in Illinois, a contract's choice-of-law clause is respected as long as it is not contrary to public policy. *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994). Therefore, Italian law is to be used in determining the requirements on and validity of the rejection of renewal. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1413 (N.D. Ill. 1996) ("the parties' choice of law will be given effect unless it would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state."); *see also Champagnie v. W.E. O'Neil Constr. Co.*, 77 Ill.App.3d 136, 139, 395 N.E.2d 990, 992, 32 Ill.Dec. 609, 611 (1979) (citing 16 Am.Jur.2d Conflict of Laws § 6, at 16; 17 C.J.S. Contracts § 16, at 619) ("[A] court should not refuse to apply the law of a foreign State ... unless it is contrary to pure morals or abstract justice, or unless the enforcement would be of evil example and harmful to its own people.").

This Court must therefore determine the point at which registered mail is deemed "communicated" under Italian law. It is clear that the letter of non-renewal was sent on October 29, 1999, and it is undisputed that Plaintiff did not receive it until after that deadline of October 31, 1999. There is sufficient evidence in the record from which it can be determined as a matter of law that, in Italy, the date of sending is considered the effective date of postal communication. *See generally* Perbellini Decl. (citing Italian caselaw); *see also* Court of Bassano del Grappa Opinion (finding Christia's notice of non-renewal effective). Plaintiff has failed to frame its arguments on this issue according to Italian law, and does not challenge the ruling of the Italian

-10-

court or the assertions made by Perbellini, an Italian attorney whose qualifications are not in doubt. Therefore, this Court sees no reason to reconsider the Italian court's finding that the notice of non-renewal was properly given, and that the Agreement therefore did not renew automatically.

Plaintiff also maintains that the October 29, 1999 letter, as written, did not clearly express Christia's interest in avoiding the automatic renewal. This point of contention is caused in part by the fact that the letter, as translated, leaves the subject of the sentence unclear. The translation cited by Plaintiff reads: "the Agreement, itself, is not intended to be automatically renewed." Pl.'s Facts Appendix Ex. 6; Perbellini Decl. ¶ 3. This could be seen as either an observation regarding one of the conditions of the Agreement, or an express decision to counter the automatic renewal that would otherwise be triggered. However, the former interpretation makes no intuitive sense - why would Christia write a letter, two days before the deadline for notice of non-renewal, simply interpreting a clause in a four-and-a-half year old contract? In addition, the language was considered adequate in both the Italian court that considered the letter, *see* Court of Bassano del Grappa Opinion, and the Italian lawyer who reviewed it, *see* Perbellini Decl., both of whom considered the language in its original form.

This conclusion is supported by the actions of the Plaintiff. As late as January 20, 2000, the two parties appear to have been negotiating a new contract. Christia Facts ¶¶ 23-30. It is counter-intuitive to suppose that both parties would have continued haggling over contractual terms for three months if the automatic renewal had already been triggered.

**B.     Promises and Conduct Following Termination of 1995 Agreement**

Plaintiff also maintains that, regardless of whether or not this Court gives effect to the

Agreement's automatic renewal according to the contractual terms, Christia's course of conduct

toward Hana K. demands that renewal be implied.  In support, Hana K. points to several of

Christia's actions subsequent to October 29, 1999, including: a series of shearling coat

purchases; Christia's continued represention "to Hana K. and to the world that Hana K. was the

distributor for Christia in North America," Am. Compl. ¶ 20, Exs. G, H, I; and presure put on

Hana K. to advertise, exhibit at particular trade shows, and purchase more of Christia's product,

*id.* ¶¶ 21-24.  Christia responds that it made no explicit representation regarding the exclusivity

of the relationship, and that its dealings with Hana K. following the termination of the 1995

Agreement were solely on "an at-will, non-exclusive basis pursuant to its standard terms of

sale."

The conduct cited in support of an implied renewal between the parties is scant and

unconvincing.  Plaintiff repeatedly points to Christia actions taken "subsequent to October 29,

1999," *see generally*, Am. Compl. ¶¶ 20-23, rather than actions taken following the end of the

1995 Agreement in April of 2000, and generally obscures the relevant dates.  As a result, some

of the cited actions are properly viewed as efforts to meet the demands of the previous

agreement, rather than any indication of renewal of the Agreement.  For example, Hana K. lists

three catalogues as evidence that Christia communicated "to Hana K. and to the world that Hana

K. was the distributor for Christia in North America." *Id.* ¶ 20.  However, only one of these

catalogues actually fell outside the time frame of the 1995 Agreement, and therefore only that

catalogue reasonably provides support for Plaintiff's argument.  Christia likewise overstates the

"pressure" put on Hana K. to advertise or market; this evidence boils down to a single letter requesting that Hana K. inform Christia "if you're going to the Fashion Coterie and in which days the fair is," and noting that "there is an interesting issue in WWD magazine to put advertising for a good price." Am. Compl. ¶ 22. The weight of this evidence is further undermined, in that Christia's interest in having Hana K. push its product does not prove an exclusive relationship, but more simply evidences a desire to have Hana K. sell more of its coats.

Plaintiff attempts to bolster its arguments by claiming evidence that it does not have. Its Amended Complaint stated that Christia "specifically represented to Hana K. that it would continue to use Hana K. as Christia's exclusive North American distributor," and made "specific and knowing communications to that effect." Am. Compl. ¶ 21. The record contains no such evidence, other than those discussions found within the context of unresolved contract negotiations. At best, Plaintiff has pointed to a letter that it maintains "admits that an arrangement was in force and effect between Christia and P.H. International," but which in truth mentions only a "discussion about the contract." Appendix Ex. 35.

In addition, Plaintiff's actions undermine any argument that Hana K. itself believed that it was in an exclusive contractual relationship with Christia following April of 2000. Most obviously, Hana K. expressly stated in 2002 that "[t]he last contract expired about three years ago and was never renewed." FBLG Facts. ¶ 41. In addition, Hana K. itself breached the alleged exclusivity by displaying other shearling coats at trade fairs in 2001 and 2002. Christia Facts ¶¶ 34-35, 43-44.

The conduct between the parties following the termination of the 1995 Agreement amounts to a round of failed contract negotiations, a series of sales contracts that were no more

than at-will and non-exclusive, and general hostilities between parties of a once-profitable, but now terminated, exclusive business arrangement. Plaintiff has failed to show any evidence of why it might reasonably have thought the relationship was intended to be exclusive after April of 2000. Even if this record could somehow be seen as grounds for finding an agreement regarding exclusivity between the parties, Plaintiff has advanced no evidence of what the terms of such a contract might be: the 1995 Agreement's conditions could not be adopted because they were expressly rejected by one of the parties; the parties' contract negotiations of early 2000 did not coalesce into a mutual understanding of terms; and their post-termination sales make no indication of exclusivity from which a definite and more expansive agreement could be implied. Because an exclusive contract cannot be enforced without terms of adequate specificity, even if an agreement were found it would be an unenforceable one.

### C.    Contractual claims

There was no enforceable agreement between Hana K. and Christia after the termination of the 1995 Agreement in April of 2000. Therefore, summary judgment is GRANTED with respect to Plaintiff's breach of contract and specific performance claims in Counts I and XII.

### D.    Claims of Estoppel and Fraud

There was no promise or false statement that Hana K. would continue to serve as Christia's exclusive North American distributor. Both Pierre and Hana Lang admitted Christia never stated that an exclusive relationship was in place after April of 2000, and instead rely on a general notion that they "[didn't] think there would have been any need for such a thing." P. Lang Dep. at 158; *see also* H. Lang Dep. at 19. Counts III, IV, and VI all rely on Plaintiff's ability to prove that Christia made such a representation: promissory estoppel (Count III)

-14-

requires "a promise unambiguous in terms...[with] reliance being expected and foreseeable by

the promisor," *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 (7th Cir. 1991); equitable estoppel

(Count IV) requires "a material misrepresentation of past or present circumstances," *R. S.*

*Bennett & Co., Inc. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182 (7th Cir. 1979); and common law

fraud (Count VI) requires "a false statement of material fact," *Geschke v. Air Force Ass'n*, 425

F.3d 337, 345 (7th Cir. 2005).  Because there was no promise or statement on which these claims

can be based, summary judgment is GRANTED with respect to all of these counts.

Additionally, constructive fraud (Count VIII) under Illinois law requires a fiduciary

relationship between the parties, and Plaintiff has entirely failed to establish that such a

relationship existed between them following the termination of the 1995 Agreement, other than

sales contracts that appear to have been satisfied.  Therefore, summary judgment is GRANTED

with respect to Count VIII.

### E.   Wrongful Benefit

Finally, Hana K. maintains that its efforts to establish Christia's brand in the relevant

markets of North America provide grounds for quantum meruit (Count IX) or unjust enrichment

(Count X) claims.  Both of these claims require that injustice would result from allowing a

conveyed benefit to remain with a particular party.  *See, e.g., Midcoast Aviation, Inc. v. Gen.*

*Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990) (quantum meruit); *HPI Health Care Serv.,*

*Inc., v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989).

However, to the extent that the benefits were conveyed according to the terms of the 1995

Agreement, both parties benefitted from any marketing that Hana K. did.  Subsequent to that

Agreement's termination in April of 2000, the exclusive distributorship was no longer in place,

but Hana K. would still benefit itself by increasing sales. As to the more ethereal "branding" according to which Plaintiff demands recompense, to the extent that Hana K. continued to build the reputation of Christia in the absence of an exclusive arrangement, it did so by its own choice rather than any compulsion from Christia. Therefore, no injustice need be remedied for benefits wrongly conveyed, and Christia's motions for summary judgment are GRANTED with respect to Counts IX and X.

## IV.    ANALYSIS OF FBLG'S MOTIONS

FBLG seeks summary judgment on Count II (tortious interference with a contractual relationship), Count V (tortious interference with prospective economic advantage), and reiterates Christia's arguments against Count XI (civil conspiracy) of the Complaint. FBLG argues that the interference claims of Counts II and V are untenable because no contract existed between Christia and Hana K. and there was no reasonable expectation of a continued business relationship.

It has already been established that there was no enforceable contract between Christia and Hana K. at any point following the termination of the 1995 Agreement. None of the claims against FBLG warrants substantial consideration in light of this finding. There was no enforceable contract, real or implied, with which FBLG could have interfered after the 1995 Agreement, and no evidence to support interference before the Agreement's expiration. Summary judgment is therefore GRANTED with respect to Count II, claiming contract interference. *Celotex*, 477 U.S. at 322 (failure of any essential element warrants summary judgment).

-16-

Plaintiff has also claimed tortious interference with prospective economic advantage. However, to be successful this claim requires that Defendant knew Plaintiff had a valid expectancy of a continued business relationship. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993). Plaintiff has failed to rebut evidence that FBLG was assured by Christia that the exclusive distributorship had expired. FBLG Facts ¶ 33. Therefore, summary judgment is GRANTED with respect to Count V's claims of interference with economic advantage.

Finally, Plaintiff has alleged civil conspiracy but has provided no evidence of an agreement to achieve a wrongful purpose. The principle elements of a civil conspiracy are an agreement between the parties to inflict wrong or injury on another and an overt act resulting in damages. *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). While Plaintiff has established that the Defendants met both before and after the termination of the 1995 Agreement, it has advanced no evidence that the meetings involved a malicious intent or resulted in a deleterious effect. The Defendants have plainly stated that no sales took place between them while the exclusive distributorship was still in place, and this has not been contradicted. It is similarly clear that tensions between Christia and Hana K. were long-running, and Christia therefore needed no prodding from FBLG to terminate and try to renegotiate its contract with Hana K. When those negotiations fell through, FBLG took steps to place itself at a competitive advantage over Plaintiff, but at that point FBLG and Hana K. were simply competing in the open market for Christia's product. Plaintiff has provided no evidence that this amounted to anything more. Summary judgment is therefore GRANTED with respect to both parties on Count XI's claim of civil conspiracy.

-17-

## IV.   CONCLUSION

For the foregoing reasons, Christia's motion for summary judment is GRANTED, and

FBLG's motion for summary judgment is GRANTED.


Enter:


/s/ David H. Coar
David H. Coar
United States District Judge

Dated: March 29, 2007

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04-C-903 | **DATE** | 10/05/2007 |
| **CASE TITLE** | P.H. International Trading Co. d/b/a Hana K. Fashions vs. Christia Confezioni et al. | | |

#### DOCKET ENTRY TEXT

For the reasons stated below, Plaintiff P.H. International Trading Co.'s motion to vacate summary judgment [207] is DENIED. The parties need not appear on the noticed motion date of 10/11/2007.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

The gravamen of Plaintiff's motion to vacate is twofold; first, P.H. International maintains that this Court wrongly accepted language from an Italian court decision as a conclusion of law, inappropriate for summary judgment purposes; second, the company claims that Defendants committed fraud by putting forth their own counsel as an expert on Italian law, whose opinion this Court relied upon in its summary judgment opinion. Neither of these arguments has merit.

Relevant to both of these issues, Plaintiff misstates the summary judgment opinion of March 29, 2007 in alleging that this Court adopted legal conclusions from both. We did not. As Defendant concedes, this Court found that it was necessary to determine whether the contract in question had been renewed, which depended both on the contract's terms, and the laws of Italy that controlled. A letter ostensibly cancelling the contract's automatic renewal had been sent on the eave of expiration, but was received afterward. Therefore, if Italian law regards notice as having been given on the mailing of a registered letter, the contract was not extended; if the law of that country considers notice as having been given upon receipt, the contract would have renewed automatically. Acknowledging that this was the central issue of summary judgment, and acting within the proper scope of authority granted under Fed. R. Civ. P. 44.1, this Court looked to the record for evidence of Italian law with which to address it. *See* Summ. J. Op. at 10 ("This Court must therefore determine the point at which registered mail is deemed 'communicated' under Italian law.").

| | Courtroom Deputy | SM(lc) |
|---|---|---|

## STATEMENT

Rule 44.1 reads in its entirety: "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law." Determination of a foreign country's law is purely a question of law. *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir. 1977), certiorari denied 98 S.Ct. 432, 434 U.S. 940, 54 L.Ed.2d 300, on remand 450 F.Supp. 227. It is therefore well within the authority of a trial court to settle questions related to the interpretation of that law at the summary judgment stage. *See, e.g., Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152 (D.C. N.M. 1973). When doing so, a court is empowered to consider *any* relevant material or source. *Trinidad Foundry and Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613 (11th Cir. 1992). A court also has the option of doing independent research into the question, though in no way is this required.

At summary judgment, Defendant provided this Court with two pieces of evidence regarding the issuance of notice under Italian law; a ruling by the Civil and Criminal Court of Bassano del Grappa, dated October 21, 2002, considering the adequacy of notice given and rejecting Plaintiff's petition for a provisional remedy that would have continued the parties' exclusive distributorship; and the sworn declaration of Maria-Cristina Perbellini, who held herself out as an Italian attorney representing one of the co-defendants in this matter, and who assessed her country's contractual law on this issue, with citations.

As to the first, despite Plaintiff's attestations to the contrary, this Court did not simply accept the ultimate conclusion of that court that P.H. International's claims had no merit; rather, we looked to the court's statement of Italian law on the subject of notice. The Italian court had stated in no unclear terms: "It is true that notice of termination as a unilateral received declaration, has its effect only at the time that it is received by the addressee; *nevertheless, said efficacy is retroactive to the date on which the encumbered party performed the act aimed at impeding the inflicted forfeiture.*" *See* Christia's Facts Ex. 27, p.3. This unequivocal statement informed this Court as to the state of Italian law on the issue.

With respect to the second piece of evidence provided by Defendant at summary judgment, Plaintiff's argument that Perbellini's testimony was fraudulent for failing to reveal her connection to Defendants is patently ridiculous, where that connection was explicitly stated in the declaration. *See* Christia's Facts Ex. 33 ¶ 1 ("I represent Christia...a co-defendant in this action, with regard to various Italian matters."). Plaintiff has provided no other basis on which to doubt her testimony. As a result, though Perbellini was clearly not an independent third party, in the absence of any countervailing evidence she was and is a perfectly suitable source for information regarding a fairly straightforward question of contract law.

To the extent that these two pieces of evidence corroborated each other, they reinforced the perceived accuracy with which they represented Italian law. That both furthermore concluded that notice was properly given in this instance was certainly noted by the Court. However, it was not ultimately determinative of whether or not summary judgment was appropriate. Tellingly, to this date Plaintiff has advanced no evidence that the interpretation of Italian law proffered by Defendant and applied by this Court was incorrect.

Despite the clarity of the Italian court's initial rejection of its argument, Plaintiff attempted to take a second (and now third) bite of the apple by bringing its case to the United States, without taking the most basic steps of properly filing its summary judgment documents or advancing countervailing explanations of Italian law. There is no need to vacate this Court's summary judgment opinion, or expend any more resources on this case. Plaintiff's motion to vacate judgment is DENIED.

# THE ITALIAN CIVIL CODE

### and

### Complementary Legislation

*Translated in 1969 by*
Mario Beltramo, Giovanni E. Longo, John H. Merryman

*Supplemented, translated and edited by*
Mario Beltramo
*(from 1970 through 1996)*

*Subsequently supplemented, translated and edited by*
Susanna Beltramo

### BOOK FOUR

### OBLIGATIONS

### (Articles 1173–2059)

## Oceana®
NEW YORK

Release 2008-1
Issued June 2008

Booklet 6

ent when he who
ther party (782²,

m or within that
usage (1328²).

e immediately so

otance is ineffec-

a new offer.

est of the offeror
formance should
ime and place in

-formance to the

evoked until the
performance in
bound to indem-
-formance of the

nes to the knowl-

he offer open for
.

i or supervening
unless the nature

or acceptance is
does not lose its
he conclusion of
when it appears
nces (1674, 1722

ain bound by his
leclaration of the
icle 1329.

---

If no time limit has been fixed for the acceptance, it can be established by the court (1183¹).

**1332. Adherence of other parties to contract.** If other parties can adhere to a contract and the manner of adherence has not been determined, the question can be directed to such agency as may have been constituted for the implementation of the contract or, in the absence thereof, to all the original contracting parties (1981, 2525).

**1333. Contract binding on offeror only.** An offer for the purpose of forming a contract that creates obligations only for the offeror (1236, 1268, 1272, 1273, 1936) is irrevocable as soon as it comes to the knowledge (1335) of the party to whom it is directed.

The offeree can reject the offer within the time required by the nature of the transaction or by usage. In the absence of such rejection the contract is concluded.

**1334. Efficacy of unilateral acts.** Unilateral acts (1324) take effect from the time when they come to the knowledge of the person to whom they are directed (1335, 1724).

**1335. Presumption of knowledge.** An offer, acceptance (1326), their revocation (1328) and any other declaration directed to a given person, are deemed to be known at the moment they reach the address of the person to whom they are directed, unless he proves that, without his fault, it was impossible for him to have notice of them.

**1336. Offer to public.** An offer to the public, when it contains the essential terms of the contract toward whose formation it is directed, is effective as an offer, unless it appears otherwise from the circumstances or usage (1989).

Revocation of the offer, if made in the same form as the offer or in equivalent form, is effective even as to one who has no notice of it.

**1337. Negotiations and pre-contractual liability.** The parties, in the conduct of negotiations and the formation of the contract, shall conduct themselves according to good faith (81, 1175, 1358, 1366, 1375).

**1338. Knowledge of reasons for invalidity.** A party who knows or should know the existence of a reason for invalidity (1418 *ff.*) of the contract and does not give notice to the other party is bound to compensate for the damage (2043) suffered by the latter in relying, without fault, on the validity of the contract (139, 1398).

**1339. Automatic insertion of terms.** Terms, including the prices of goods or services, which are imposed by law or by corporative norms, are automatically inserted in the contract, even in place of contrary clauses included by the parties (1419², 1679⁴, 1815).

**1340. Customary terms.** Customary terms are deemed to be included in the contract, unless it appears that they were not intended by the parties (1374).

Vicenza 26/03/2009

Spett.le
**P & H International Tradin Corporation D/B/A Hana K**

*To the kind attentino of mr. Pierre Lang*

**Re: Hana K / Christia Confezioni spa**

Dear Mr. Lang,

with reference to the judgement rendered on the 21st of October 2002 by the Court of Bassano del Grappa between Hana K and Christia Confezioni spa I observe what follows:

- such judgement, even if it was not appealed, can not have the effect of *res judicata* on the matter of the effect of the notice not to renovate the distributorship agreement sent by Christia to Hanak on the 29th october 1999, because it was rendered in a summary proceeding, as confirmed in many occasion by the Italian Supreme Court of Cassazione (see Cass. civ., Sez. I, 07/06/2007, n.13360; Cass. civ., Sez. I, 19/02/2003, n.2479; Cass. civ. 26/06/2001, n.8765);
- in any case such judgement was wrong when it stated that the notice not to renovate the distributorship agreement sent by Christia to Hana K on the 29th october 1999 produced its effects, arguing that considering the average time of delivering of registered mail it was allowed to presume that such notice arrived in time at the address of the addressee and also arguing that, whereas the notice not to renovate a contract is a receptive act, so that it produces its effects only when it is received by the addressee such, effects go back to the date of its posting.
It is in fact obvious that a letter sent from Italy to the United States will never arrive to destination in only three days; while, with reference to receptive acts, in the Italian law there is no rule or principle that allows to consider in time an act only posted and not also received in time; existing on the contrary the principle according to which, considering that the receptive act produces its effects only when it is received by the addressee, it is onus of the party which sent such act to prove not only that it was posted in time but also that it was received in time by the addressee. Such principle has been confirmed by the Italian Supreme Court of Cassazione (see Cass. Civ. Section III, 28/09/1998 n. 9696).

Therefore I do not see any reason because the US courts should have relied on such wrong judgement of the Italian Court of Bassano del Grappa.

King Regards.

Avv. Alvise Cappellaro

# DECLARATION OF ALVISE CAPPELLARO

I the undersigned Alvise Cappellaro, born in Vicenza, Italy, on June 25, 1969, with domicile at my office in Vicenza, Italy, C.trà San Biagio 25, declare the follow.

\*

**1.** I am an attorney in Vicenza, Italy. I have been member of the bar in Italy since 1997. I was the defendant of P.H. International Trading Company d/b/a Hana K. Fashions in the case for urgent measures held in 2002 before the Court of Bassano del Grappa between my client and Christia Confezioni spa

**2.** For this reason I examined the effects of the registered letter that Christia sent to Hana K on October 29, 1999, communicating its willing not to renovate the Distributorship Agreement effective between the parties, since May 1, 1995, and I am acquainted with the ruling of the case rendered by the judge of the Court of Bassano del Grappa.

**3.** I am also acquainted of the declaration rendered by mrs. Maria Cristina Perbellini on April 14, 2006.

**4.** With reference to the duration of the contract, art. 8. of the agreement stated: *This Agreement shall remain in force for five years, starting from the date on which it executed and, on its expiry, it shall be tacitly renewed for another five years, excepting for a notice to terminate being expressed by one of the parties hereto, to be communicated, at least, six months prior to the expiry of the five-year period.*



**5.** Under Italian law the sending of the abovementioned October 29, 1999 registered letter, without the proof of its receiving by the addressee six months before of the expiring date of the contract (i.e. on or before October 31, 1999), was not sufficient to terminate the contract.

**6.** It is indeed undoubted that the notice not to renovate a contract is a so called receptive act, which means that it produces its effects only when it is received by the addressee.

**7.** As a matter of fact the receptive acts are regulated by articles 1334 and 1335 of the Italian Civil Code (R.D. 16/03/1942 n. 262) wich say the follows:

*Art. 1334. Efficacia degli atti unilaterali.*

*Gli atti unilaterali producono effetto dal momento in cui pervengono a conoscenza della persona alla quale sono destinati.*

*(Effects of receptive acts.*

*Unilateral acts produce its effects from the moment they arrive to the knowledge of the person to whom they are addressed)*

*Art. 1335. Presunzione di conoscenza.*

*La proposta, l'accettazione, la loro revoca e ogni altra dichiarazione diretta a una determinata persona si reputano conosciute nel momento in cui giungono all'indirizzo del destinatario, se questi non prova di essere stato, senza sua colpa, nell'impossibilità di averne notizia)*

*(Presumption of knowledge.*



*The proposal, the acceptation, their revocation and every other declaration directed to a certain person are deemed known in the moment they arrive to the address of the addressee, if the addressee does not prove that he could not know them without guilt).*

**8.** Therefore it is onus of the party which claims the effects of a receptive act to prove not only that such act was sent in time, but also that it was received in time by the addressee.

**9.** It is true that the Corte di Cassazione, the highest court in Italy, has clearly affirmed in many occasion that the proof of the arrival to the addressee of a registered letter is given, on a presumption basis, by the receipt of its sending, even without holding the post-paid receipt, but such proof regard only the fact of the receiving of the letter and not the other fact, that can be prominent in certain cases, of the moment on which the letter has been received.

**10.** Besides there are several other rulings of the Corte di Cassazione in which are stated the principles that receptive acts produce its effect only starting from the moment when they are received by the addressee, that the notice not to renovate a contract is a receptive act, and that it is therefore onus of the party that gives such notice to prove not only that it was posted, but also that it was received by the addressee before the term settled for its validity by the law ore by the contract (Cass. 25/06/2006 n. 20784; Cass. 14/01/2005 n. 689; Cass. 22/11/2000 n. 15066; Cass. 28/09/1988 n. 9696).

**11.** It is also true that, as Mrs. Maria Cristina Perbellini also stated in its declaration, the Corte Costituzionale in its ruling of 26 November 2002, n. 477 has recognized two different moment in the service procedure, making a distinction for the effects of such service as to whether they are related to the serving party or to the party which is served upon. As to the serving party, the service is accomplished from the moment in which the act to be served I presented to the competent officer for its service.

**12.** As it is true that such ruling has been ratified in 2005 by the Italian Civil Procedure Code section applicable to service of process, where art. 149 now states that *The service is accomplished for the serving party when the envelope is taken to the process server while for the party to be served upon when the envelope is received.*.

**13.** However both, the ruling of the Corte Costituzionale and the modify of the Civil Procedure Code, regard only service of process and not notice of private receptive acts, and they are subsequent to the judgement of the court of Bassano del Grappa.

**14.** Moreover since the distributorship agreement stated that the notice not to renovate the contract should have been communicated by one party to the other not later than six months before the expiring of the contract it is correct to deem that such provision was settled in the interest of the party that would have received the notice not to renovate the contract from the other party, which would be the party which is served upon by such notice, so that such party could be informed in a proper time about the decision of the other party.

**15.** Therefore, again, also by applying the principle stated by the Corte Costituzionale and by the new version of art. 149 of civil procedure code, in our case, the notice not to renovate the contract could produce its effect only if it was received in time by the addressee.

**16.** Moreover in our case also the words used by the contract seems to confirm that the notice should have also been received in time by the addressee, and not only sent by the sender, because art. 8 above quoted said that the notice not to renovate the contract was "*to be communicated* (in the Italian version "da comunicarsi") *at least, six months prior to the expiry of the five-year period.*", and it is evident that the verb to communicate refers to an action which get perfected only when its object is acknowledged by the addressee of the communication.

**17.** Finally it is also true that in the italian civil law the effects of private legal acts are regulated also by the principle of *bona fides* (good faith), which, applied to the matter in discussion, implies that if a party sends to another party a receptive act with a proper advance with respect to a certain final term, in consideration of the usual postal delivery time, it can not suffer the delay of the relevant mail.

However in our case there was no *bona fides* nor diligence in Christia behaviour because, even by assuming the faster times of international mail delivering, it was impossible that a registered letter sent from Italy on Octobre Friday 29, 1999 could have arrived to

destination in the United States on or before October Sunday 31, 1999.

**18.** Under the above illustrated order of reasoning the ruling rendered by the judge of the Court of Bassano del Grappa upon the validity of the notice not to renovate the contract sent by Christia to Hanak on October 29, 1999, and the declaration rendered by mrs. Maria Cristina Perbellini on April 14, 2006 turn out to be wrong.

**19.** The judge essentially supported is ruling by invoking the presumption of knowledge settled by art. 1335 of the Italian Civil Code and by stating that the advance taken by Christia in sending the notice had respected the usual time of delivering of registered mail; whereas I have already explained that such presumption does not concern also the proof of the moment when such knowledge is achieved and that the usual time of delivering for registered mail from Italy to the United States is much longer than two working days (considering working day also saturday).

\*

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Vicenza, Italy, June 22, 2009

(Avv. Alvise Cappellaro)

6

# European curriculum vitae

## Personal information

| | |
|---|---|
| Surname(s) / First name(s) | **CAMILLERI ENRICO** |
| Address(es) | **Via Roma, n. 94 – 90133 – PALERMO - ITALY** |
| Telephone(s) | Mobile: +39 3351881138 |
| Fax(es) | +39 091 329254 |
| E-mail(s) | ecamilleri@unipa.it ; ecamilleri@kentlaw.edu |
| Nationality(-ies) | **ITALIAN** |
| Date of birth | **29/07/1976** |
| Gender | **MALE** |

**Desired employment / Occupational field** — **Visiting Professor of Civil Law at China-EU School of LAw**

## Work experience

| | |
|---|---|
| Dates | 07 February 2005 – to date |
| Occupation or position held | *Associate Professor of Private Law with tenure for the University of Palermo, School of Law* – Palermo, Italy |
| Main activities and responsibilities | Courses for undergraduate as such as graduate students. Research activity |
| Name and address of employer | University of Palermo (Universita' degli Studi di Palermo) / Piazza Marina n. 61 – 90133 –Palermo (Italy) |
| Type of business or sector | Academic/Research |

| | |
|---|---|
| Dates | Academic Year 2004/05 – to date |
| Occupation or position held | *Professor of Civil Law for the "Post-Graduate Program in Legal Professions", University of Palermo, School of Law* – Palermo, Italy |
| Main activities and responsibilities | Courses for graduate students |
| Name and address of employer | University of Palermo (Universita' degli Studi di Palermo) / Piazza Marina n. 61 – 90133 –Palermo (Italy) |
| Type of business or sector | Academic/Research |

| | |
|---|---|
| Dates | January 2004 – February 2005 |
| Occupation or position held | *Researcher in Private Law , University of Palermo, School of Law* – Palermo, Italy |
| Main activities and responsibilities | Research activity |
| Name and address of employer | University of Palermo (Universita' degli Studi di Palermo)/ Piazza Marina n. 61 – 90133 –Palermo (Italy) |
| Type of business or sector | Academic/Research |

| | |
|---|---|
| Dates | Academic Year 2005/06 – Academic Year 2006/07 |
| Occupation or position held | *Professor of Civil Law for the "Kore" University, School of Law* – Enna, Italy |
| Main activities and responsibilities | Courses for undergraduate. |
| Name and address of employer | Kore University (Enna – Italy) / Cittadella Universitaria - 94100 - Enna |

For more information go to http://europass.cedefop.eu.int
© European Communities, 2003

| | |
|---|---|
| Type of business or sector | Academic/Research |

| | |
|---|---|
| Dates | **Academic Year 2002/03 – Academic Year 2005/06** |
| Occupation or position held | *Professor of Business Law for the University of Palermo, School of Law* – **Enna, Italy** |
| Main activities and responsibilities | Courses for undergraduate students . |
| Name and address of employer | University of Palermo – breanch of Enna (Italy) / Piazza Marina n. 61 – 90133 –Palermo (Italy) |
| Type of business or sector | Academic/Research |

## Work experience abroad

| | |
|---|---|
| Dates | **Academic Year 2008/09, Spring term** |
| Occupation or position held | *Visiting Professor at the "Chicago-Kent, College of Law"*, **Illinois Institute of Technology – Chicago (IL), USA** |
| Main activities and responsibilities | Holding the courses of **European Law** and **European Business Law** for undergraduate and graduate (LLM) students. |
| Name and address of employer | Chicago Kent College of Law – Illinois Institute of Technology/ 565 W. Adams St. – 60661-Chicago (IL) –United States of America |
| Type of business or sector | Academic/Research |

## EDUCATION AND TRAINING

| | |
|---|---|
| Dates | **February 2007 – October 2007** |
| Title of qualification awarded | *Visiting Fellowship* |
| Principal subjects/Occupational skills covered | Research activity in the field of European integration and European Competition Law |
| Name and type of organisation providing education and training | *"British Institute of International and Comparative Law"*, **University of London – London, UK** |
| Dates | **December 2007** |
| Title of qualification awarded | *Visiting Scholarship* |
| Principal subjects/Occupational skills covered | Research activity |
| Name and type of organisation providing education and training | *Chicago-Kent, College of Law"*, **Illinois Institute of Technology – Chicago (IL), USA** |
| Dates | **September and November 2005** |
| Title of qualification awarded | **Full Reader** |
| Principal subjects/Occupational skills covered | Research activity |
| Name and type of organisation providing education and training | *"Max- Planck Institute für Geistiges Eigentum, Wettbewerbs und Steuerrecht"* **– Munich, Germany** |
| Dates | **Academic Years 2000/2001-2001/2002** |
| Title of qualification awarded | *Research team leadership: Atti giuridici unilaterali e diritti della persona* |
| Principal subjects/Occupational skills covered | Research activity on individual rights |

For more information go to http://europass.cedefop.eu.int
© European Communities, 2003

| | |
|---|---|
| Name and type of organisation providing education and training | University of Palermo – School of Law |
| Dates | **January 2003** |
| Title of qualification awarded | **Doctoral Degree in Diritto Privato Generale (General Private Law)** |
| Principal subjects/Occupational skills covered | Law |
| Name and type of organisation providing education and training | University of Palermo – School of Law |
| Dates | November 1998 |
| Title of qualification awarded | Master's Degree in Laws |
| Principal subjects/Occupational skills covered | Law |
| Name and type of organisation providing education and training | University of Palermo – School of Law |
| Level in national or international classification | 110/110 summa cum laude (Italian maximum degree marks) |

## Personal skills and competences

**Mother tongue(s)** — **Italian**

**Other language(s)**

*Self-assessment*
*European level (*)

| Understanding | | Speaking | | Writing |
|---|---|---|---|---|
| Listening | Reading | Spoken interaction | Spoken production | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **English** | C1 | Proficient User | C1 | Proficient User | C1 | Proficient User | C1 | Proficient User | B2 | Independent User |
| **Spanish** | C2 | Proficient User | C2 | Proficient User | B1 | Independent User | B1 | Independent User | A1 | Basic User |

(*) Common European Framework of Reference (CEF) level

**Computer skills and competences**

➢ **O.S.**: Microsoft DOS. Microsoft Windows 95, 98, 98 SE, ME, XP Pro

➢ **Software**: Good knowledge of Adobe-Macromedia Dreamweaver MX, Adobe Photoshop CS, Corel-Jasc Paint Shop Pro, Adobe Illustrator CS, IE and Firefox. Proficiency in MS Office (WinWord, Excel, Power Point). Familiarity with Adobe-Macromedia Flash MX, Fireworks and Typo3 cms

**Driving licence(s)** — Italy  - Category of vehicles: B

## MAIN PUBLICATIONS

➢ <u>**Books**</u>

- *Contratti a valle rimedi civilistici e disciplina della concorrenza*, **Jovene editore, 2008.**

- *La formazione unilaterale del rapporto obbligatorio*, Giappichelli editore, 2004.

For more information go to http://europass.cedefop.eu.int
© European Communities, 2003

- *Le promesse unilaterali*, Giuffrè editore, 2002.

➢ **Articles**

- **La tutela del contraente a valle di intesa illecita tra giurisprudenza comunitaria e diritto interno, in Europa e Diritto Privato 1/2007, 44;**

- *La garanzia per vizi ed impegno del venditore alla riparazione del bene: note critiche a margine di Cass. Sez. Un. N.° 13294/2005*, in Riv. Dir. Civ. 2006, II, 469-507;

- *Gli atti prenegoziali*, capitolo del volume collettaneo intitolato "Il contratto in generale – requisiti ed elementi del contratto", a cura di R. Alessi e G. Grisi, per la serie "Casi e questioni di Diritto Privato", Vol. XXI, Giuffrè editore, 2002;

- *Interesse del minore e disconoscimento della paternità. Spunti critici per un (ri)allineamento al sistema delle azioni di stato*, in Familia, 2001;

- *Gli acquisti degli enti diversi dalle società e la "gratuità in entrata"*, in Riv. Dir. Civ., 2000;

- *Alienazione in garanzia conclusa in forma preliminare*, in Nuova Giur. Civ. Comm., 2000;

- *Dal prelimare ai preliminari: la frammentazione dell'istituto e la disciplina della trascrizione*, in Contr. e Impresa, 1999.

For more information go to http://europass.cedefop.eu.int

© European Communities, 2003

## PERSONAL DETAILS

Name: **Claudia Di Marzo**

Date of Birth: 16th August 1980, Palermo, Italy
Current address: 111/A Belmonte Chiavelli, Palermo (IT)
Mobile: 0039 347 5182166
E-mail: claudiadimarzo@gmail.com

## WORK EXPERIENCE

➢ *Attorney* (2008 – to date)

➢ *Legal Consultant* for "Punzo Studio Legale" – Palermo (IT) – (2005 – to date)

## WORK EXPERIENCE ABROAD

➢ *Legal Consultant* for "Law Centre" (England and Wales) – London (UK) – (June 2007 – October 2007)

  • Civil Rights Organization and Law Firm specializing in Tort Law

## EDUCATION AND TRAINING

➢ *TOEFL Degree* at "British Institutes" – Palermo (IT) – (20th June 2009)

  • C2 (Certificate of Proficiency in English)

➢ *Assistant Professor* to Professor Enrico Camilleri at "University of Palermo, School of Law" – Palermo (IT) – (Academic Year 2006/07 – to date)

➢ *Ph. D. Candidate* in Civil Law at "University of Palermo, School of Law" – Palermo (IT) – (December 2006 – to date)

  • Researching on "Mass torts, Collective Interests and Liability Rules from the Civil Law Systems' perspective"

➢ *LL. M.* at "University of Palermo, School of Law" – Palermo (IT) – (December 1999 – November 2004)

  • 110/110 *summa cum laude* (Italian maximum degree marks)

➢ *D.E.L.E. Degree* at "Instituto Cervantes" – Palermo (IT) – (20th October 2004)

  • C2 (Nivel Superior)

## COMPLEMENTARY EDUCATION AND TRAINING

- *Visiting Scholar* at "European Centre of Tort and Insurance Law – Institute for European Tort Law" – Vienna (AU) – April 2009

- *Visiting Scholar* at "Chicago–Kent, College of Law – Illinois Institute of Technology" – Chicago (IL) – (Academic Year 2007/08, Spring Term)

- *Visiting Scholar* at "University of Westminster" – London (UK) – (June 2007 – October 2007)

- *Full Reader* at "Institute of Advanced legal Studies – University of London" – London, UK (June 2007 – October 2007)

- *Full Reader* at "British Institute of International and Comparative Law – University of London" – London (UK) (June 2007 – October 2007)

- *Visiting Scholar* at "ISISC, Istituto superiore di Scienze Criminalistiche Internazionali" – Syracuse (IT) – (Academic Year 2005/06)

  - Dissertation topic: "International Criminal Law, European Cooperation in Penal Matters, Issues and Perspectives"

- *Erasmus Scholar* at "Universitat de Barcelona" – Barcelona (SP) – (Academic Year 2002/03)

  - European Commission exchange programme for higher education (ERASMUS)


## LANGUAGES

Italian: Mother tongue.

English:

| Understanding | | | | Speaking | | | | Writing | |
|---|---|---|---|---|---|---|---|---|---|
| Listening | | Reading | | Spoken interaction | | Spoken production | | | |
| C2 | Proficient User | C2 | Proficient User | C1 | Proficient User | C1 | Proficient User | C1 | Proficient User |

*(\*) Common European Framework of Reference (CEF) level*

Spanish:

| Understanding | | | | Speaking | | | | Writing | |
|---|---|---|---|---|---|---|---|---|---|
| Listening | | Reading | | Spoken interaction | | Spoken production | | | |
| C2 | Proficient User | C2 | Proficient User | C1 | Proficient User | C1 | Proficient user | C1 | Proficient User |

## IT SKILLS

➢ O.S.: Microsoft DOS, Microsoft Windows 95, 98, 98 SE, ME, XP Pro

➢ Good knowledge of Adobe-Macromedia Dreamweaver MX, Adobe Photoshop CS, Corel-Jasc Paint Shop Pro, Adobe Illustrator CS, IE and Firefox. Proficiency in MS Office (WinWord, Excel, Power Point). Familiarity with Adobe-Macromedia Flash MX, Fireworks and Typo3 cms

## MAIN PUBLICATIONS

➢ *Books*

- *Commentario al Codice Civile, Articles 1988 – 1991* (Giuffrè ed., 2009)

➢ *Articles*

- *Proving Fault and Causation in Italian Medical Malpractice Cases* (forthcoming)

## REFERENCES

➢ Available on request

P.H. INTERNATIONAL TRADING
COMPANY d/b/a HANA K. FASHIONS
Plaintiff,

*vs.*

CHRISTIA CONFEZIONI S.p.A. *et al.*
Defendants.

## AFFIDAVIT OF CLAUDIA DI MARZO

1. I am an attorney with the law firm of Francesco Punzo – Studio Legale – located in Palermo, Italy, and also I am a Ph.D. candidate in Civil Law at Palermo University, School of Law. I have been a member of the BAR in Italy since 2008. I have been asked to review the opinion rendered on 21st October, 2002, by the judge of the Court of Bassano del Grappa, in the case for urgent measures between P.H. International Trading Company d/b/a Hana K. Fashions [hereafter, Hana K.] and Christia Confezioni S.p.A. [hereafter, Christia].

2. For this reason, I examined the Exclusive Distributorship Agreement effective between the above mentioned parties since 1st May, 1995, and the notice of termination that Christia sent to Hana K. on 29th October, 1999. I am also acquainted with the declaration rendered by Mrs. Maria Cristina Perbellini on 14th April, 2006.

3. With reference to the expiration of the Agreement, Article 8 states: "This agreement shall remain in force for five years, starting from the date on which it executed and, on its expiry, it shall be tacitly renewed for another five years, except for a notice to terminate being expressed by one of the parties hereto, to be communicated, at least, six months prior to the expiry of the five-year period." Determined by reference to the initial term of the 1995 Agreement between Christia and Hana K. (1st May, 1995), the notice to terminate the Agreement was to be communicated by 31st October, 1999.

4. Under Italian law the registered letter, containing the notice of termination of the 1995 Exclusive Distributorship Agreement, sent by Christia on 29th October 1999, was not sufficient to terminate the contract with Hana K.

1

5. In fact, it is undisputed that Hana K. did not receive the registered letter until after the deadline of 31st October, 1999, which is a circumstance that decisively affects the effectiveness of the letter at issue.

6. According to the constant jurisprudence of the Corte di Cassazione, the highest court in Italy, the notice to terminate a contract must be considered a receptive act (*ex plurimis,* Cass. Civ. 31st October 2008, Sezione Terza, n. 26282; Cass. Civ. 16th March 2005, Sezione Terza, n. 5695; Cass. Civ. 28th June 1997, Sezione Terza, n. 5802; Cass. Civ. 07th March 1992, Sezione Terza, n. 2763). Several provisions of the Italian Civil Code (the "C.C.") have to be taken into account to determine the conditions under which this type of notice can be said to be effective. Article 1334 C.C. states: "Unilateral acts take effect from the time when they come to the knowledge of the person to whom they are directed." This Article is connected to the following, Article 1335 C.C., which provides that "an offer, acceptance, their revocation and any other declaration directed to a given person, are deemed to be known at the moment they reach the address of the person to whom they are directed, unless this person proves that, without his fault, it was impossible for him to have notice of those acts."

7. Reasoning from the provisions above cited, it is clear that the Italian legal system adopts the **principle of receipt**, as to establish in which moment a receptive act is deemed to be effective. The burden of proof that such an act has reached the person to whom it was directed is on the party, who claims the effects of the act. This proof leads to a presumption of knowledge of the receptive act from the person to whom it was directed.

8. In our case, the Defendant produced only the proof of the sending of the notice to terminate the agreement, corresponding to the original post-paid receipt dated 29th October 1999. According to the judge, such a proof was conclusive evidence that the notice to terminate the agreement reached the addressee's address. By the same element (*i.e.* the post-paid receipt), the judge also presumed that the notice of termination was received prior to 31st October, the deadline agreed between the parties.

9. I want to make it clear first that the judge's ruling, which denied the motion for specific performance made by Hana K., is an interlocutory order, and also that the

2

judge denied the motion because, as stated in the judgment, "there is merit and good reason for damages." Therefore, having the judge acknowledged the existence of factual issues to be tried in court, all the observations and convictions contained in the order cannot be considered a final judgment, nor they can contribute to the final holding in the case. On the contrary, in the ruling rendered on 05th October 2007, the United States District Court for the Northern District of Illinois has mistakenly relied on the Bassano del Grappa judge's order, which was considered from the court a dispositive judgment. That same court has also accepted the allegations contained in the declaration rendered by Mrs. Maria Cristina Perbellini without exploring whether or not different understanding of the law can apply to the case at issue.

10. With the above in mind, the judge's order can now be examined.

11. As to the matter of the presumption of knowledge of a receptive act, Article 1335 C.C. clearly states that such a presumption follows from the fact of the receipt of the receptive act. Confirmation thereof must be found on serious, accurate and consistent proofs, as held by the Corte di Cassazione in several opinions (*e.g.* Cass. Civ. 15th February 1999, Sezione Seconda, n. 1265).

12. Italian case law contains contrasting opinions on the matter of the presumption of knowledge of a registered letter post-paid, whose mailing receipt is the only evidence produced by the Defendant in our case. In many occasions, the Corte di Cassazione has affirmed that the proof of the arrival to the addressee of a registered letter is given, on a presumption basis, by the receipt of its sending issued by the Post Office to the sender (*e.g.* Cass. Civ. 27th July 2001, Sezione Terza, n. 10284). Although, more recently, the same Court has held that "the proof of the sending of a registered letter by itself is not sufficient to establish that the letter came to the knowledge of the person to whom it was directed. On the contrary, only the proof of the receiving of the letter leads to a presumption of knowledge of the letter from the addressee" (Cass. Civ. 27th October 2005, Sezione Prima, n. 20924). The latter opinion seems to be more consistent with the provisions governing the efficacy of receptive acts, and also with the need to protect the legitimate expectations of addressee of those acts.

13. This approach finds further support in the **principle of trust and confidence,** by which the confidence of the persons concerned with a notice deserves

3

to be protected, and better realizes the need of **legal certainty** in business transactions.

14. If one compares the two approaches above described, it clearly appears that the latter one, complying with Articles 1334 and 1335 C.C. and meeting the principles applicable to business transactions, must be preferred over the former.

15. For the reasons above explained, the proof of the sending of a registered letter by itself is not sufficient to support the presumption of its knowledge from the addressee; according to Article 1335 C.C., this presumption needs the further proof that the registered letter was actually received. Therefore, in our case, the judge has erred in considering the presumption of knowledge of the registered letter from the Plaintiff to be "in explicit compliance with the law" (*i.e.* a relative presumption of law). In fact, without the necessary precondition of the proof of the arrival of the registered letter, the judge's presumption constitutes nothing more than a rebuttable discretionary presumption, as it is established by Article 2727 C.C.[1]

16. Rebuttable discretionary presumptions are subject to the legal prohibition of *praesumptio de praesunto* (divieto di doppia presunzione), which means that they cannot lead to a second degree presumption (Cass. Civ. 18th January 2008, Sezione Tributaria, n. 1023; Cass. Civ. 22nd February 2001, Sezione Seconda, n. 2612; Cass. Civ. 1st March 1987, Sezioni Unite, n. 2639). However, in our case, the judge, reasoning from the presumption of knowledge of the registered letter, also assumed that "the envelope reached the addressee's address prior to the term agreed between the parties." Therefore, if one considers the first fact presumed by the judge as a rebuttable discretionary presumption, it follows that the judge, making a second degree presumption, committed a violation of the legal prohibition just described.

17. In light of the previous considerations, the moment when the registered letter was received by the addressee cannot be determined through the presumption of

---

[1] Article 2727 C.C. provides: "Presumptions are the consequences that the law or the court draws from a known fact to arrive to a unknown fact." Presumptions of law can be conclusive or relative (also known as rebuttable mandatory presumptions). A conclusive presumption cannot be rebutted by evidence and must be taken to be true whatever the evidence to the contrary. A relative presumption is a conclusion derived from a particular set of facts, taken to be true by legal prescription until refuted. A rebuttable discretionary presumption is an assumption made by the court, taken to be true unless someone proves otherwise.

knowledge of the letter, in the absence of the proof (of the fact of) of its arrival to the addressee's address. Furthermore, by stating that the advance taken by the Defendant in sending the notice (*i.e.* two days before the due date) had respected the usual time in delivering of registered mail, the judge did not consider that the usual time in delivering of a registered letter from Italy to the United States takes three to five days.

18. Reasoning from Article 8 of the Exclusive Distributorship Agreement, the deadline of 31st October 1999 seems to be settled by the parties for the validity of the notice to terminate the Agreement; if that was the case, only a timely notice could have been effective. Although, the crucial question of the determination of the moment when the notice was due has been by-passed by the judge, who stated that "it is true that notice of termination, as a unilateral received declaration, has its effect only at the time that it is received by the addressee; nevertheless, said efficacy is retroactive to the date on which the encumbered party performed the act aimed at impeding the inflicted forfeiture."

19. There is no provision in Italian Civil Code that attributes retroactive effects to the receptive acts, nor difference between their validity and effectiveness (as recently confirmed also by the case law; see Cass. Civ. 16th May 2000, Sezione Seconda, n. 6323). Therefore, the assessment made by the judge with reference to the point at issue is not worthy of further consideration.

20. Finally, as to the ruling of 26th November 2002, n. 477 of the Corte Costituzionale and the subsequent modification made to Article 149 of Italian Civil Procedure Code (the "C.P.C."), it is true that the Court recognized two different moments in the service procedure, making a distinction between the accomplishment of the service from the serving party and that of the party who is served upon. As to the serving party, the service is accomplished from the moment in which the act to be served is presented to the competent officer for its service. However, both the ruling and the modification of Article 149 C.P.C. regard the service procedure and its execution, and not the effectiveness of the act to be served. Moreover, the purpose of the Court was to release from liability the serving party, if any delay in mailing the notice or in its receiving were to be caused by someone else; but neither one of these circumstances did occur in our case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Palermo, Italy, August 3, 2009

*Claudia Di Marzo*

Avv. Claudia Di Marzo

*Enrico Camilleri*

Prof. Avv. Enrico Camilleri
Associato di Diritto Privato
Università degli Studi di Palermo
Dipartimento di Diritto Privato Generale
Facoltà di Giurisprudenza